1  Roman E. Darmer II (SBN 212578)
   HOWREY LLP
2  2020 Main Street, Suite 1000
   Irvine, California  92614
3  Telephone:  (949) 721-6900
   Facsimile:  (949) 721-6910
4  Email:  darmerr@howrey.com

5  Attorneys for Petitioner ROBERT A. LONG

6

7

8  UNITED STATES DISTRICT COURT

9  DISTRICT OF ALASKA

10

11  UNITED STATES OF AMERICA,           ) Case Nos.:  3:02 CR-0031-JVS;
                                        )             3:04 CV-00286-JWS
12           Plaintiff,                 )
                                        ) **MEMORANDUM OF POINTS AND**
13       v.                             ) **AUTHORITIES IN SUPPORT OF**
                                        ) **MOTION FOR MISCELLANEOUS**
14  ROBERT A. LONG,                     ) **RELIEF**
                                        )
15           Petitioner.                ) [JOINT EXHIBIT LIST AND
                                        ) PETITIONER'S DEPOSITION
16  ─────────────────────────────       ) DESIGNATIONS IN CONNECTION
                                          WITH THE MOTION FOR
17                                        RECONSIDERATION FOR
                                          MICELLANEOUS RELIEF FILED
18                                        CONCURRENTLY HEREWITH]

19
                                        Judge: Hon. James V. Selna
20
                                        Hearing Date:      None
21                                      Time:              None
                                        Est. Time:         None
22

23

24

25

26

27

28

LP

**I.    INTRODUCTION**

Petitioner Robert A. Long, through appointed counsel, respectfully submits this memorandum of points and authorities in connection with the pending motion for miscellaneous relief. Mr. Long respectfully submits that based on the evidence adduced at the hearing conducted by this Court on June 1, 2007, as well as the deposition testimony designated as part of the record of this proceeding, there is a basis to conclude that there was both an actual violation of section 455.  Even if the Court finds no evidence of an improper *ex parte* communication, the preexisting relationship between the trial court and the judicial victims in the underlying criminal case constituted an unavoidable appearance of impropriety under section 455(a). For all the reasons set forth below, Mr. Long respectfully requests that the Court (1) to find that at the time the trial court recused itself from ruling on Docket Nos. 193 and 194 it should also have vacated its prior ruling on Mr. Long's section 2255 petition and ordered the matter transferred to an independent, unconflicted federal judicial officer and (2) to grant relief under Fed. R. Civ. P. 60(b)(6) vacating that prior order on the section 2255 petition to enable a "fresh look" at the petition consistent with the requirements of section 455 and applicable precedent.

**II.    FACTUAL BACKGROUND**

   **A.    Ms. Crump's Affidavit And Testimony.**

Ms. Crump is a waitress at a restaurant in Seward, Alaska where Mr. Long is a regular customer. 6/1/07 Tr. 116:15-20.[1]  She has two years of college classes and has no legal training. 6/1/07 Tr. 117:8-16.  She served as his third party custodian during his pretrial release in his criminal case.  6/1/07 Tr. 117:2-4.  She did not understand that this function exposed her to financial risk but did understand she had an obligation to

---

[1] References in this format are to the transcript of the evidentiary hearing on June 1, 2007.

LP

1  notify the government should Mr. Long jump bail. 6/1/07 Tr. 181:13-20.  In that

2  capacity, she traveled with him each day to Alaska for his trial and attended all of the

3  trial other than when she was excluded from the courtroom.  6/1/07 Tr. 117:5-7.  She

4  testified as a defense witness at trial. 6/1/07 Tr. 140:19-25.  She did not realize that she

5  was being called as a character witness and did not understand that her testimony would

6  benefit his case. 6/1/07 Tr. 182: 8-13.  On the contrary, she believed that her testimony

7  was mostly irrelevant to the case.  6/1/07 Tr. 140:19-25; 183:1-10.  She expressed

8  disappointment that Mr. Long was not able to provide in her opinion a proper defense.

9  6/1/07 Tr. 162:21-23.

10       In her affidavit dated May 18, 2005, she stated that on an unknown date and time

11  during the trial, she returned to the Courtroom after a recess and was surprised to see the

12  jury and Judge Sedwick there, but Mr. Long and his attorney were not present.

13  Petitioner's Exhibit A.[2]  The affidavit states that she heard the Court and the jury have

14  communications relating to Mr. Long's mental state and related to certain document

15  issues.  *Id.*  The affidavit further states that Ms. Crump did not realize that the *ex parte*

16  communication she had observed during the trial was improper until she overheard a

17  conversation in her workplace in or about the February or March 2005 relating to an

18  alleged *ex parte* communication in a different local matter.  *Id.*

19       Ms. Crump has consistently described the *ex parte* conduct alleged in the

20  affidavit. 6/1/07 Tr. 123:12-14.  She repeated the allegations to Special Agent Payne

21  and Deputy U.S. Marshal Caudill and provided substantially greater detail during her

22  lengthy interview by the agents in November 2005.  *See supra* Section II.B.  Although

23  Ms. Crump acknowledged that had she known how the affidavit was going to be used

24  she would have written it "a little bit different," those differences related to providing

25  additional facts rather than changing any of the fundamental facts alleged in the

26

27  [2] References in this format are to the Joint Exhibit List filed concurrently herewith.

28

LP

1   affidavit.  6/1/07 Tr. 123:15-129:4. Payne Dep. Tr. 29:22-31:9.  The nature of the

2   changes she would make to the affidavit "would be to add more details and more

3   description of what she saw in more detail."  6/1/07 Tr. 129:5-17.  *See supra* Section

4   II. B.  That is precisely what she did in the interview with the law enforcement agents.

5   Payne Dep. Tr. 30:15-23; Caudill Dep. Tr. 19:1-20:19.

6        Her testimony at the June 1 hearing was consistent with the basic facts of her

7   affidavit and her more detailed, statement to the government agents notwithstanding the

8   passage of more than 5 years since the events at issue.  Ms. Crump explained that

9   several years after Mr. Long's trial, a group of people at the Marina Café, including Mr.

10  Long, were talking about a local incident relating to an alleged *ex parte* communication.

11  6/1/07 Tr. 177:16-17:12.  This caused Ms. Crump to recall an incident she observed

12  during Mr. Long's trial between members of the jury and the Court.  Ms. Crump

13  testified that, thereafter, based on her recollection, Mr. Long prepared an affidavit for

14  her signature and presented it to her at the coffee shop where she worked.  6/1/07 Tr.

15  120:1-25; 167:10-21; 178:13–179:11.  Specifically, Ms. Crump testified that she saw an

16  exchange between a juror and the judge in which the juror asked a question about Mr.

17  Long's mental state.  6/1/07 Tr. 125:1-15.  She testified that the exchange regarding

18  mental health took a short time, less than half a minute.  6/1/07 Tr. 181:5-10.  She also

19  observed an exchange between the judge and a juror in which she recalled the juror

20  asking a question about some documents or a packet of documents.  6/1/07 Tr. 180:1-4;

21  180:9-25. She recalled that the judge responded to the question by saying something

22  like "[r]efer to the document, you have your information here," and that the substance of

23  the communication was just a few words.  6/1/07 Tr. 180:1-4; 180:9-25.  Ms. Crump

24  estimated that this exchange regarding the packet took just a few seconds as well.

25  6/1/07 Tr. 181:2-4.

26

27

28

LP

**B.    The Government's Investigation Of Ms. Crump.**

Sometime after Ms. Crump executed her affidavit the government set out to confirm and validate those facts to enable the government to oppose a motion filed by Mr. Long. Specifically, on November 4, 2005, the government dispatched FBI Agent Payne and Deputy U.S. Marshal Caudill to Seward, Alaska to interview Ms. Crump. Payne Dep. Tr. 9:23-16:16. Although Ms. Crump had been a signatory on Mr. Long's bail bond and, as such, had provided all of her contact information to the Court, the government agents did not attempt to call or write to her in advance to set up an appointment at a mutually convenient time. Instead, they just showed up at her place of employment in the middle of her work shift. Payne Dep. Tr. 8:11-9:22; 16:8-17-3. Ms. Crump is a waitress who works in a small coffee shop in Seward. 6/1/07 Tr. 119:10-16. Not surprisingly, Ms. Crump's employer was not particularly enthusiastic about the prospect of her employee spending working hours being interviewed by government agents rather than serving customers. Payne Dep. Tr. 8:16-9:22. Although Ms. Crump is a single mother who works full time − in addition to caring for three minor children and home schooling her eleven year old son who suffers from autism − she nevertheless agreed to meet with the government agents after her shift was over. Crump Dep. Tr. 27:11-28:6, 95:1-19; Payne Dep. Tr. 9:18-22.

The government agents again approached Ms. Crump as she finished her work shift and asked her to get into Agent Payne's FBI-issued black sports utility vehicle. Payne Dep. Tr. 24:6-25:1. Ms. Crump was put in the front passenger seat while one agent sat in the driver's seat and one agent in the back seat. Crump. Dep. Tr. 29:21-25. They spoke with her in that FBI vehicle for at least one hour and twenty minutes. Payne Dep. Tr. 29:16-30:2. Ms. Crump recalled that one of the agent's indicated the interview would be recorded. Crump Dep. Tr. 29:18-30:4. Although Agent Payne acknowledged that he had recording equipment in his FBI-issued vehicle, he testified that the interview was not recorded. Payne Dep. Tr. 27:16-29:15. The government agents showed Ms.

LP

1  Crump her two-page affidavit and questioned her extensively about the facts set forth

2  therein and she provided expanded explanations for the facts and circumstances leading

3  up to the preparation of the affidavit.[3]  Payne Dep. Tr. 30:3-23.  Most importantly, Ms.

4  Crump informed the agents that Mr. Long had prepared the government affidavit and

5  presented it to her for signature, and that she assumed the details would be presented

6  later in Court.  Payne Dep. Exh. 2 at 3.  She repeated that she saw a juror asking a

7  question about a packet and asking something about Mr. Long's mental state.  Payne

8  Dep. Exh. 2 at 2.  Both Special Agent Payne and Deputy U.S. Marshal Caudill found

9  Ms. Crump to be truthful and credible and found her expanded explanation and detail

10  relating to the affidavit to be credible.  Payne Dep. Tr. 30:25-31:9; Caudill Dep. Tr.

11  20:12-21:2.  Neither Agent Payne nor Deputy Marshall Caudill had any information to

12  corroborate or disprove any of the information Ms. Crump provided.  Payne Dep. Tr.

13  38:7-19.

14  **C.    The Testimony Of The CSOs.**

15      Ms. Crump's May 18, 2005 affidavit refers to "two guards who had been their

16  [sic] before in the Courtroom" at the time of the alleged ex parte contact.  The Court

17  Security Officers ("CSOs") who were employed at the Federal Courthouse during Mr.

18  Long's trial and who could be identified for this matter did not have any specific

19  memory of Mr. Long's trial.  *See e.g.*, Potts Dep. Tr.  6:12-19; White Dep. Tr. 5:20-25,

20  6:1-25, 7:12-15, 8:1-13; Campbell Dep. Tr. 4:24-25, 5:1-2, 7:20-25, 8:1; Potts Dep. Tr.

21  6:12-25, 7:1-7; Reinhardt Dep. Tr. 4:24-25, 5:1-8, 10:4-13; Sneddon Dep. Tr. 4:22-25,

22  5:1-25, 6:1-5; McMorrow Dep. Tr. 4:25, 5:1-7; McGowan Dep. Tr. 5:2-11; Dehart Dep.

23  Tr. 5:10-25, 6:1-13, 9:10-25, 10:1; Caudill Dep. Tr. 6:1-5; Otte Dep. Tr. 13:18-24,

24  15:12-17.

25

26  [3]It is undisputed that Ms. Crump was not given an opportunity to review the FBI 302
    report prepared after her interview by the federal agents.  6/1/07 Tr. 4-15; Payne Dep.
27  Tr. 37:11-13.

28

LP

1    Deputy U.S. Marshal Caudill testified that court security in a case like Mr. Long's

2  would be handled exclusively by the CSOs unless a defendant was in custody, in which

3  case one or more deputy U.S. Marshal's might also be in the courtroom.  Caudill Dep.

4  Tr. 34:19-38:23.  The CSOs testified that on a daily basis they would be assigned at

5  various times to various postings within the Courthouse or particular courtrooms or

6  building patrols based on a schedule prepared daily.  *See, e.g.*, Potts Dep. Tr. 7:25-9:8.

7  The CSO posting schedule was based on the individual courtroom schedules.  *Id.*  The

8  CSOs testified that no electronic versions or hard copies of the daily CSO posting

9  schedule are maintained and thus the schedules for the time period encompassing Mr.

10  Long's trial were unavailable.  Potts Dep. Tr. 9:9-11:16.  Although the courtrooms in

11  the courthouse, including Judge Sedwick's, were equipped with cameras at the time of

12  Mr. Long's trial, the CSOs testified that those cameras did not have the ability to record

13  on a regular, non-emergency basis until sometime after late 2002.  Potts Dep. Tr.

14  12:5-13:23.  Prior to that time, the recording function could only be triggered on an

15  emergency basis by the judge in the courtroom or the CSO in the Courthouse control

16  room.  Potts Dep. Tr. 13:18-24.  The CSO testimony was that no video record of Mr.

17  Long's trial is available for purposes of this matter.  *Id.*

18    **D.    The Testimony Of The Electronic Court Reporter.**

19    Debbie Lyons, the electronic court reporting officer for Mr. Long's trial, testified

20  that she maintained the dual mode audiocassette tape recording equipment that recorded

21  the trial.  Lyons Dep. Tr. 8-10.  She authenticated the log notes that she maintained

22  indicating the starts and stops of the proceedings on the record and explained the

23  nomenclature she used on those logs.  Lyons Dep. Exh. 2.[4]  Ms. Lyons could not recall a

24

25

_____

26  [4] The logs are primarily handwritten except for one day that is typewritten.  Lyons Dep.,
Exh. 2.  Ms. Lyons did not have an explanation for the difference in format other than

27  there "may have been a problem with the program where the computer stopped or froze
and we had to go to a tape at that point."  Lyons Dep. Tr. 23:2-24:17.

28

LP

1   situation in Mr. Long's trial where Mr. Long and his counsel were not present in the

2   courtroom and there were ongoing proceedings. Lyons Dep. Tr. 51:10-19. She testified

3   that she could not imagine a circumstance in which the proceeding would be in the

4   record when the parties or their counsel were not present. Lyons Dep. Tr. 50:21-51:16.

5   While the audio recordings of the trial transcript reflect the same times as Ms. Lyons'

6   log notes in terms of the time that the proceedings were "on" or "off" the record,

7   nothing in the actual recording of those events indicates who is present in the courtroom

8   at the time that the recording begins each time anew. *Compare* Exhibit A hereto and

9   Petitioner's Exhibit 2.

10          **E.     The Testimony Of The Former Jurors.**

11          The former jurors who testified at the hearing had substantially different levels of

12   recollection of the trial. Some of the former jurors could not recall any details about the

13   trial. *See, e.g.*, 6/1/07 Tr. 25:7-9 (Hancock); 6/1/07 Tr. 27:3-32 (Brickell), 6/1/07 Tr.

14   41:3-24 (Burnett); 6/1/07 Tr. 56:19-57:17 (Moore); 6/1/07 Tr. 69:8-70:21 (Gjosund); Tr.

15   82:3-83:12 (Price). Former juror Renk did not recall that Mr. Long even had a lawyer.

16   6/1/07 Tr. 87:13-19. Some of the former jurors had some recollection but did not recall

17   observing the *ex parte* communications described by Ms. Crump. *See, e.g.*, 6/1/07 Tr.

18   7:3-8:20 (Porter); 6/1/07 Tr. 47:4-49:17 (McHaney); 6/1/07 Tr. 74:15-75:15, 77:23-78:7

19   (Tucker). Some of the other jurors recalled observing some of the facts recounted by

20   Ms. Crump but could not recall the location in which they occurred. For example,

21   former juror McGinty recalled "somebody asking a question about a packet" but did not

22   remember if it was in the courtroom or the jury room, nor did she recall any question

23   about mental health. 6/1/07 Tr. 28:13-29:9,32:4-8. Former juror Garret had relatively

24   little recollection of the trial and testified that there could have been times when Judge

25   Sedwick was present but Mr. Long was not in the courtroom. 6/1/07 Tr. 62:5-22,

26   67:11-68:2.

27

28

LP

Juror Mary Beth Lutrick recalled her jury service and testified that she recalled an instance when an individual juror asked a question of the Court relating to a piece of paper or a packet of documents. 6/1/07 Tr. 15:2-9, 23-16:1. Ms. Lutrick testified that she could not recall the exact portion of the trial at which it occurred: "The only thing I remember, that there was a question of the packet. I really couldn't tell you how it proceeded from there." 6/1/07 Tr. 18:18-23; 20:7-11; 21:14-19. Ms. Lutrick also testified that the topic of "mental illness might have come up … within the jury room or within open court." 6/1/07 Tr. 16:5-17.

Review of the electronic record of the trial proceedings as well as the log notes of the electronic court reporter indicates that the jury did not return to the jury box in the courtroom between the time it was excused to begin deliberations and the time it returned to deliver the verdict. *See* 6/1/07 Tr. 188:13-15, Lyons Dep. Exh. 2.

There is no indication in the record or on the face of the government exhibits admitted at trial that there were any excisions to those exhibits. *See* Joint Exhibit List filed concurrently herewith. There is no indication in the record that the defense exhibits admitted at trial were excised in any way. *See* 6/1/07 Tr. 189:6-12.[5]

### F.     The District Of Alaska.

It is undisputed that the District of Alaska is an extraordinarily small bench. In May 2002, the Court consisted of 3 active District Judges (Singleton, Sedwick and Beisline) and 3 senior District Judges, (Fitzgerald, Heydt and Holland) all of whom maintained chambers in the Anchorage Federal Courthouse. The Court also included six Magistrate Judges, only two of whom were based in the Anchorage Federal Courthouse (Roberts and Branson), while the others (Jamin, Miller, Pallenberg and

_____

[5] Mr. Long has requested a set of the defendant's trial exhibits from the Federal Public Defender's Office but has not yet received a copy. In the event any of those exhibits indicate excisions, Mr. Long will promptly notify the Court and opposing counsel. In an abundance of caution, all of the trial exhibits will be marked as exhibits to the June 1, 2007 hearing in this matter. *See* Joint Exhibit List.

LP

1  Guss) sat part time and/or in another location.  *See* 2002 Judicial Staff Directory for

2  District of Alaska.  The Federal Courthouse in Anchorage is itself a small building in

3  which the courtrooms and chambers are located in close physical proximity.

4         **G.**    **Judge Sedwick's Professional And Personal Relationship With The**

5               **Victims.**

6        Judge Sedwick testified that prior to Mr. Long's case he had not only a

7  professional but also a personal, social relationship with Magistrate Judge Roberts and

8  District Judge Singleton, the victims in Mr. Long's case.  6/1/07 Tr. 103:7-22.

9  **III.**    **APPLICABLE LAW**

10        Section 455(a) provides, in pertinent part, that "[a]ny judge ... of the United States

11  *shall* disqualify himself in any proceeding in which his impartiality might reasonably be

12  questioned."  28 U.S.C. § 455(a) (emphasis added).  The statute imposes a

13  self-enforcing duty on the judge, but its provisions may be asserted also by a party to the

14  action.  *United States v. Conforte,* 624 F.2d 869, 880 (9th Cir. 1980).  The Ninth Circuit

15  has long held that "[i]t would be incorrect as a matter of statutory construction to

16  interpret section 455(a) as setting up a different test for disqualification for bias or

17  prejudice from that in section 455(b)(1)," which requires a judge to disqualify himself

18  "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge

19  of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).

20  Accordingly, "recusal will be justified either by actual bias *or* the appearance of bias."

21  *Yagman v. Republic Ins.,* 987 F.2d 622, 626 (9th Cir. 1993) (emphasis added).  The

22  Ninth Circuit has long held that "i[t] is a general rule that the appearance of partiality is

23  as dangerous as the fact of it."  *United States v. Conforte,* 624 F.2d at 881.

24

25

26

27

28

LP

1    "Under section 455(a), the judge is under a continuing duty to ask himself what a

2  *reasonable* person, knowing all the relevant facts, would think about his impartiality."

3  *United States v. Greenspan*, 26 F.3d 1001, 1005-1007 (10th Cir. 1994) (emphasis

4  added) (noting that "[t]here are few characteristics of a judiciary more cherished and

5  indispensable to justice than the characteristic of impartiality.").  Put another way,

6  "[s]ection 455 requires not only that a judge be subjectively confident of his ability to be

7  evenhanded, but also that an informed, rational, objective observer would not doubt his

8  impartiality."  *United States v. Winston,* 613 F.2d 221, 222 (9th Cir. 1980); *Milgard*

9  *Tempering, Inc. v. Selas Corp. of Am.,* 902 F.2d 703, 714 (9th Cir. 1990) (test is whether

10  an *average, reasonable* person, knowing all the circumstances, would harbor doubts

11  about the judge's impartiality) (emphasis supplied); *see Liljeberg v. Health Servs.*

12  *Acquisition Corp.,* 486 U.S. 847, 859-60 (1988) (the purpose of section 455(a) is "to

13  promote public confidence in the integrity of the judicial process.").

14         The Ninth Circuit has followed the Supreme Court's teaching that by its own

15  terms, section 455(a) mandates disqualification in a proceeding in which a judge's

16  impartiality might reasonably questions and the Court has "independently recognized

17  that what is required "is a reasonable factual basis for doubting the judge's

18  impartiality."  *United States v. Rogers*, 119 F.3d 1377, 1383 (9th Cir. 1997), citing

19  *United States v. Conforte*, 624 F.2d at 891.  At least one court has held that "All that is

20  necessary is '*some* kind of probative evidence.'"  *In re Searches Conducted on March 5,*

21  *1980*, 497 F. Supp. 1283, 1291 (E.D. Wis. 1980) (emphasis added).  The Supreme Court

22  has explained that "If [the judge] concludes that 'his impartiality might reasonably be

23  questioned,' then he should also find that the statute has been violated." *Liljeberg v.*

24  *Health Servs. Acquisition Corp.*, 486 U.S. at 861.  The "reasonable person" in this

25  context means a "well-informed, thoughtful observer," as opposed to a "hypersensitive

26  or unduly suspicious person."  *Clemens v. United States Dist. Court*, 428 F.3d 1175,

27  1178 (9th Cir. 2005).

28

LP

1    Because section 455 imposes an objective standard, *neither* the government *nor*

2 the defendant bears the burden of proof in a motion for recusal.  "Recusal under section

3 455 is to be judged on the record.  *It is not a question of either the government or the*

4 *defendant bearing a burden of proof.*"  *United States v. Greenspan,* 26 F.3d at 1007

5 (emphasis supplied).  Courts in this and other Circuits have held that "when in doubt the

6 Court should resolve the issue in favor of the party seeking recusal."  *Church of*

7 *Scientology v. Cooper*, 495 F. Supp. 455, 462 (D. Cal. 1980).  A judge should resolve

8 any close issue in favor of disqualification if a reasonable person might question his

9 impartiality.  *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983).  It is well

10 settled that any doubts "must be resolved in favor of recusal." *United States v. Patti,* 337

11 F.3d 1317, 1321 (11th Cir. 2003); *In re United States,* 441 F.3d 44, 56 (1st Cir. 2006).

12 *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983).

13    It is also settled that section 455(a) can, in proper cases, be applied retroactively

14 where the judge "is called upon to rectify an oversight and to take the steps necessary to

15 maintain public confidence in the impartiality of the judiciary."  *Liljeberg* v. *Health*

16 *Servs. Acquisition Corp.*, 486 U.S. at 848.

17    Finally, while section 455 does not, on its own authorize the reopening of closed

18 litigation, Fed. R. Civ. 60(b)(6) "provides courts with authority 'adequate to enable

19 them to vacate judgments whenever such action is appropriate to accomplish justice.'"

20 *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. at 864 quoting *Klaprott v.*

21 *United States*, 335 U.S. 601, 614-15 (1949).  To that end, the Supreme Court teaches

22 that in determining whether a judgment should be vacated for a violation of § 455(a), "it

23 is appropriate to consider the risk of injustice to the parties in the particular case, the

24 risk that the denial of relief will produce injustice in other cases, and the risk of

25 undermining the public's confidence in the judicial process."  *Id.* at 864.  The

26 touchstone of the court's analysis under section 455(a) has also been defined by the

27 Supreme Court.  "We must continuously bear in mind that to perform its high function

28

LP

1 in the best way 'justice must satisfy the appearance of justice.'" *Id*. quoting *In re*
2 *Murchison*, 349 U.S. 133, 136 (1955) (citation omitted).

3 **IV.    DISCUSSION**

4     **A.    The Record Demonstrates Some Probative Evidence That Judge**
5         **Sedwick Had An Improper *Ex Parte* Communication With The Jury**
6         **And Should Have Recused Himself Under Section 455(a).**

7     As a preliminary matter, there is no basis anywhere in the case law interpreting
8 section 455(a) that Mr. Long bears the burden of proof as to whether Judge Sedwick
9 should have recused himself under section 455, much less under section 455(a).  On the
10 contrary, the clear holding of *Greenspan* and other cases dealing with the burden of
11 proof under section 455(a) is that Mr. Long does *not* bear any such burden proof in this
12 proceeding.  Rather, the standard is whether this Court, sitting in place of Judge
13 Sedwick, concludes that an average reasonable person, knowing all the circumstances,
14 would harbor doubts about his impartiality.  *Liljeberg. v. Health Servs. Acquisition*
15 *Corp.*, 486 U.S. 847, 859-60; *Milgard Tempering, Inc.,* 902 F.2d at 714.  Where, as
16 here, there is at least some probative evidence raising questions as to impartiality, this
17 Court must conclude that recusal was warranted on this record and the Court should
18 resolve any doubts in favor of recusal.  *United States v. Greenspan*, 26 F.3d at 1007.

19     The testimony of Tina Crump, in and after the affidavit she signed in this case, is
20 probative evidence demonstrating a reason to doubt the judge's partiality.  Ms. Crump,
21 though a friend and supporter of Mr. Long, has consistently asserted the same essential
22 factual allegations relating to two, short but independent communications between jury
23 members and Judge Sedwick that she observed in the absence of Mr. Long and his
24 attorney during the criminal trial.  She gave the affidavit without knowing precisely how
25 Mr. Long would use the information in litigation.  Ms. Crump repeated and expanded on
26 her allegations in a lengthy interview with the government agents and the agents found
27 her credible after exploring and pressing her on the details of her observations (for more

28

LP

1  than an hour and one half) three years after the events in question. Ms. Crump

2  recounted the same basic facts in a lengthy deposition and again at the hearing. She was

3  credible in her deposition and hearing testimony. The fact that there are minor

4  inconsistencies in her recollection of events more than five years ago is hardly

5  surprising, particularly given her busy work and family schedule. There was at least

6  some corroborating evidence of Ms. Crump's testimony through the testimony of the

7  former jurors. Specifically, Ms. Lutrick testified that the question of the "packet" as

8  articulated by Ms. Crump did come up in the proceedings and also testified that the

9  topic of mental illness might have come up "within the jury room or within open court."

10  6/1/07 Tr. 16:5-17. Finally, the actual recording of the trial proceedings do not provide

11  any clear indication of who is present in the courtroom at any given time (*i.e.*, neither

12  the Court nor the clerk state which parties and counsel are present each time the

13  proceedings recommence) and, even if the record did reflect anything of the sort, such

14  evidence would not prove or disprove whether any communications, *ex parte* or

15  otherwise, had occurred before the recording commenced.[6]

16      **B.    Even If The Court Concludes That There Is Insufficient Evidence Of**

17           **The Alleged Ex Parte Communication Did Not Occur The Court**

18           **Should Still Find That Recusal Is Warranted Under Section 455(a).**

19      The undisputed fact that Judge Sedwick had both a longstanding professional and

20  personal relationship with the victims in Mr. Long's case — Magistrate Judge Roberts

21  and District Judge Singleton — without any other evidence provides a reasonable

22  factual basis on which to doubt his impartiality.

23

24

25

26  [6] Although Judge Sedwick has denied that the alleged *ex parte* communications
    occurred, that testimony is self-serving, particularly given the later recusal of the other
27  active judges on the bench.

28

LP

It is well settled law that recusal of an individual judge pursuant to section 455(a) is required when the judge himself has been the subject of a personal threat unless the threat to the judge's life or health was modified by a desire to recuse the judge. *Clemens v. United States Dist. Court,* 428 F.3d 1175 (9th Cir. 2005), citing *United States v. Yousef*, 327 F.3d 56, 170 (2d Cir. 2003); *United States v. Greenspan,* 26 F.3d 1001, 1006-1007 (10th Cir. 1994); *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). In addition, the Seventh Circuit has held that recusal of all of the district court judges in a district was required because the defendant had been accused of planning to bomb the building in which all of the district bench had chambers. *In re Nettles*, 394 F.3d 1001, 1002-03 (7th Cir. 2005). While Judge Sedwick was not the victim in Mr. Long's case, his personal and professional relationship with the two judges who were the victims and the extraordinarily small size of the bench of the District of Alaska within a single small Courthouse demonstrates a reasonable factual basis on which a reasonable person would doubt Judge Sedwick's impartiality in the highly charged context of a case involving threats of physical harm.

In *Clemens*, the Ninth Circuit held that disqualification of an entire district may not necessarily be justified based on alleged threats to one or even a few judges in a federal district. 428 F.3d at 1180. However, that holding was specifically limited based on two facts in that case that are decidedly not present here. First, the Ninth Circuit held that "*Clemens* speculates − but does not tender any evidence −about personal relationships among the judges of the Central District [of California] that might give rise for a reasonable observer to question the impartiality of the judges. *Id*. Second, the Ninth Circuit heavily relied on the vast size of the Central District of California, then and now one of the nation's largest judicial districts, with 34 active and senior judges sitting in four separate courthouses in three geographically distant divisions. *Id*. Neither of these facts so critical to the holding in *Clemens* are remotely applicable here.

LP

1     On the contrary it is undisputed in this case that Judge Sedwick had a professional

2  *and* personal relationship with the two alleged victims in Mr. Long's case, Magistrate

3  Judge Roberts and District Judge Singleton, both before and after the latter was Chief

4  Judge of the District.  6/1/07 Tr. 103:14-22.  Judge Sedwick had those personal

5  relationships at the time he ruled on Mr. Long's Section 2255 petition and at the time he

6  ultimately recused himself.  *See* Docket No. 195.  The cases involving threats to judges

7  indicate that such cases are, of course, fraught with potential conflict issues.  The key

8  evidentiary fact on which the Court affirmed non-recusal of the entire District Court in

9  *Clemens,* the absence of any evidence of personal relationships between the numerous

10 other judges of the Central District of California and the CSO victim, is entirely

11 different here.  The fact of those undisputed "personal, social relationships" between the

12 victim and Judge Sedwick, without more, is sufficient for a reasonable observer to

13 question the impartiality of Judge Sedwick and satisfies the low, objective standard

14 required by section 455(a).

15     It is also undisputed that, unlike the facts in *Clemens*, the District Court bench in

16 Alaska is extremely small, consisting of 6 active and senior District Judges and 2

17 Magistrate Judges at the time of Mr. Long's trial, all sitting in the Anchorage Federal

18 Courthouse.  Unlike the vast size of the sprawling Central District of California, all of

19 the federal bench in the District of Alaska is located in a single courthouse, which is

20 itself a relatively small building in which the courtrooms and chambers are located in

21 close physical proximity.

22     Judge Sedwick's conflicted status at the time he ultimately transferred the case

23 after he had ruled on Mr. Long's section 2255 petition is further demonstrated by his

24 failure to provide anything close to an adequate written explanation of the basis for

25 denying the recusal motion.  Compare Docket Number 195 and *Bernard v. Coyne (In re*

26 *Bernard),* 31 F.3d 842 (9th Cir. 1994) (extensive written opinion by Circuit Judge

27 Kozinski explaining grounds for denying motion for recusal in a bankruptcy case

28

LP

because of his marriage to the U.S. Trustee for the Central District of California based in part on the response of the Committee on Codes of Conduct of the Judicial Conference of the United States). *See, e.g., United States v. Sundrud,* 397 F. Supp. 2d at 1237 (Noting in the context of Judge Rafeedie's self-recusal as a result of being a mere "acquaintance" with alleged CSO victim that "[t]he decision whether any individual judge should recuse him or herself because of more than casual personal contact with the victim or any of the potential court employee witness[es]) is not for this Court to decide, but is left to the discretion of the assigned judge to evaluate under Section 455(a).)  The extraordinary difference between a longstanding "personal, social relationship" between three federal judicial officers within the same district and a single judge's acquaintance with a CSO victim in *Sundrud* who rotates through various courtrooms should be crystal clear to any reasonable person (*i.e.*, a "well-informed, thoughtful observer") with even passing knowledge of the federal judiciary, much less to a federal judge presumably aware of his obligations under section 455(a).  *Clemens,* 428 F.3d at 1178.  While the cases provide that it is not impermissible for judges to sit on case despite possessing a level of personal familiarity with the parties involved, recusal is required where, as here, "that level of personal relationship increases to the point that the judge can not be impartial or a reasonable person would question the judge's partiality." *Id* at 1233.  The fact that Judge Sedwick did not articulate in any kind of detail the nature of his longstanding "personal, social" relationships to the victims in this case and relied instead on a cursory denial of the alleged *ex parte* communication only exacerbates the potential appearance of impropriety to a reasonable observer.  *See* Docket No. 195.

LP

1        Finally, other than Judge Sedwick's own testimony, perhaps the best evidence of

2   the close professional and personal relationships between and among the sitting judges

3   of the District of Alaska is the undisputed fact that, following Judge Sedwick's recusal

4   and transfer of docket numbers 193 and 194, each of the other active judges in the

5   District in turn recused themselves from ruling on those pending motions in Mr. Long's

6   case.  *See* Docket Number 199 (recusal of Judge Holland) and 203 (recusal of Judge

7   Beistline).  Those recusals ultimately led to the appointment of an out-of-district judicial

8   officer.  Docket Entry 204.  *United States v. Sundrud,* 397 F. Supp. 2d at 1233

9   ("Generally, judges are not required to recuse when they have a casual relationship with

10   a victim, attorney, witness, or litigant appearing before the Court.")  It is inconceivable

11   that those judges had a basis to recuse themselves under section 455(a), but Judge

12   Sedwick did not until after ruling on Mr. Long's section 2255 petition.

13   **V.   CONCLUSION**

14        There is some probative evidence that the *ex parte* communication alleged by Ms.

15   Crump did in fact occur.  Given the low, objective standard of section 455, the record in

16   this matter and the presumption that close issues be resolved in favor of recusal, is

17   warranted here.  For all the foregoing reasons, Mr. Long respectfully submits that that

18   there is ample record on which to conclude that the trial court presiding over the original

19   section 2255 proceeding should have recused himself from deciding Mr. Long's section

20   2255 motion and/or should have vacated his ruling on that motion at the time of his

21   dilatory decision to recuse himself from deciding Docket Nos. 193 and 194.

22   Accordingly, this Court should find that recusal was warranted under section 455(a) and

23   grant the requested relief under Fed. R. Civ. P. 60(b)(6) by ordering a "fresh look" of the

24   section 2255 motion by an independent federal judicial officer unencumbered by any

25   potential conflicts of interest whose decision making will not create an appearance of

26   impropriety under section 455.  However, even if the Court finds that there is no

27   probative evidence of the *ex parte* communication, the nature of the personal and social

28

1  relationship of Judge Sedwick with the victims, without more, would cause a

2  reasonable, objective observer knowing all the facts to doubt his impartiality and thus

3  recusal under section 455(a) would have been warranted to prevent even the appearance

4  of impropriety.  For all these reasons, the requested relief should be granted.

5  Dated:  July 23, 2007                              Respectfully submitted,

6                                                     HOWREY LLP

7

8

9                                                     /s/ /Roman E. Darmer II

10                                                    Attorneys for Petitioner
                                                      ROBERT A. LONG
11

12                                                    Howrey LLP
                                                      2020 Main Street, Suite 1000
13                                                    Irvine, CA  92614
                                                      Phone: (949) 759-3950
14                                                    Fax: (949) 721-6910
                                                      E-mail:  darmer@howrey.com
15                                                    CA State Bar No. 212578

16

17

18

19

20

21

22

23

24

25

26

27

28

## Exhibit A

## TRIAL TIME TRACK RE
## JURY PRESENCE
### (Excerpted from ECR Log Sheets, Lyons Dep. Exhibit 2)

| Reporter's Log Date | Reporter's Log Page Number | Index Number/Time Track[7] | Speaker | Description |
|---|---|---|---|---|
| | | | | |
| 5/28/2002 | 14 | 2:57:08 | | Jury In |
| | 17 | 4:30:56 | Judge | Jury Excused |
| | 17 | 4:31:53 | Judge | Jury Out of Courtroom |
| | | | | |
| 5/29/2002 | 1 | 9:38:59 | Clerk | Jury In |
| | 3 | 11:06:21 | Judge | Jury Excused (Recess) |
| | 3 | 11:24:55 | Clerk | Jury In (Reopen) |
| | 5 | 12:01:28 | Judge | Jury Excused (Lunch) |
| | 5 | 12:02:05 | Judge | Jury Out of Courtroom |
| | 6 | 1:47:58 | Judge | Jury In |
| | 7 | 2:04:11 | Judge | Jury Excused |
| | 7 | 2:04:58 | Judge | Jury Out of Courtroom |
| | 8 | 2:19:14 | Judge | Jury In |
| | 8 | 2:30:50 | Judge | Jury Excused |
| | 8 | 2:31:31 | Judge | Jury Out of Courtroom |
| | | | | |
| 5/30/2007 | 1 | 10:45:09 | Clerk | Jury In |
| | 2 | 12:07:02 | Judge | Jury Excused (Deliberations) |
| | 2 | 12:07:40 | Judge | Jury Out of Courtroom |
| | | | | |
| 5/31/2007 | 1 | 11:25:31 | Judge | Jury In |
| | 1 | 11:31:00 | Judge | Jury Excused |
| | 1 | 11:31:54 | Judge | Jury Out of Courtroom |

---

[7] The CDs containing the full trial transcript are submitted at Exhibit 2.  *See* Joint Exhibit List.

LP

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ................................................................................... 2

II.   FACTUAL BACKGROUND ................................................................. 2

      A.    Ms. Crump's Affidavit And Testimony. ...................................... 2

      B.    The Government's Investigation Of Ms. Crump. ......................... 5

      C.    The Testimony Of The CSOs. ....................................................... 6

      D.    The Testimony Of The Electronic Court Reporter. ..................... 7

      E.    The Testimony Of The Former Jurors............................................ 8

      F.    The District Of Alaska. ................................................................. 9

      G.    Judge Sedwick's Professional And Personal Relationship
            With The Victims. ........................................................................10

III.  APPLICABLE LAW ..............................................................................10

IV.   DISCUSSION .........................................................................................13

      A.    The Record Demonstrates Some Probative Evidence That
            Judge Sedwick Had An Improper *Ex Parte*
            Communication With The Jury And Should Have
            Recused Himself Under Section 455(a). .......................................13

      B.    Even If The Court Concludes That There Is Insufficient
            Evidence Of The Alleged Ex Parte Communication Did
            Not Occur The Court Should Still Find That Recusal Is
            Warranted Under Section 455(a). .................................................14

V.    CONCLUSION .......................................................................................18

-i-

Case Nos.  3:02 CR-0031-JVS; 3:04 CV-00286-JWS
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR MISCELLANEOUS RELIEF
DM_US:20588030_1

1

# TABLE OF AUTHORITIES

2

<u>Page No.</u>

3

**CASES**

4

*Bernard v. Coyne (In re Bernard),*

5

    31 F.3d 842 (9th Cir. 1994) ............................................................................... 16

6

*Church of Scientology v. Cooper,*

7

    495 F. Supp. 455 (D. Cal. 1980) ....................................................................... 12

8

*Clemens v. United States District Court,*

9

    428 F.3d 1175 (9th Cir. 2005) ............................................................... 15, 17

10

*Hall v. Small Business Admin.,*

11

    695 F.2d 175 (5th Cir. 1983) ............................................................................. 12

12

*Klaprott v. United States,*

13

    335 U.S. 601 (1949) ............................................................................... 12, 13

14

*Liljeberg v. Health Services Acquisition Corp.,*

15

    486 U.S. 847 (1988) ...................................................................... 11, 12, 13

16

*Milgard Tempering, Inc. v. Selas Corp. of America,*

17

    902 F.2d 703 (9th Cir. 1990) ................................................................... 11, 13

18

*In re Murchison,*

19

    349 U.S. 133 (1955) ......................................................................................... 13

20

*In re Nettles,*

21

    394 F.3d 1001 (7th Cir. 2005) ......................................................................... 15

22

*Nichols v. Alley,*

23

    71 F.3d 347 (10th Cir. 1995) ........................................................................... 15

24

*In re United States,*

25

    441 F.3d 44 (1st Cir. 2006)............................................................................... 12

26

*United States v. Conforte,*

27

    624 F.2d 869 (9th Cir. 1980) ................................................................... 10, 11

28

**LP**

-ii-

Case Nos.  3:02 CR-0031-JVS; 3:04 CV-00286-JWS
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR MISCELLANEOUS RELIEF

DM_US:20588030_1

*United States v. Greenspan,*
26 F.3d 1001 (10th Cir. 1994) ........................................................ 11, 12, 13, 15

*United States v. Patti,*
337 F.3d 1317 (11th Cir. 2003) ........................................................ 12

*United States v. Sundrud,*
397 F. Supp. 2d at 1233 ........................................................ 17, 18

*United States v. Winston,*
613 F.2d 221 (9th Cir. 1980) ........................................................ 11

*United States v. Yousef,*
327 F.3d 56 (2d Cir. 2003) ........................................................ 15

*Yagman v. Republic Insurance,*
987 F.2d 622 (9th Cir. 1993) ........................................................ 10

## STATUTES

28 U.S.C. § 455(a) ........................................................ 10

Fed. R. Civ. P. 60(b)(6) ........................................................ 18

Fed. R. Civ. P. 60(b)(6) ........................................................ 3, 4

DM_US:20588030_1

LP

1

**CERTIFICATE OF SERVICE**

2

  I hereby certify that on July 23, 2007, a copy of the foregoing document

3 1.  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
    **MOTION FOR MISCELLANEOUS RELIEF**

4

5 was served electronically and by regular U.S. mail upon the following:

6

7 <u>**ELECTRONIC & U.S. MAIL**</u>     <u>**ELECTRONIC & U.S. MAIL**</u>

8 Daniel R. Cooper, Jr.       Honorable James V. Selna, Judge
  Assistant U.S. Attorney       U.S. Central District Court of

9

  United States District Court of Alaska  California

10 United States Attorney's Office    Ronald Reagan Federal Bldg.
  222 W. 7th Ave., #9, Room 253    and U.S. Courthouse

11

  Anchorage, Alaska 99513-7567   411 West Fourth Street, 8th Floor

12 907-271-3376 (direct line)     Santa Ana, CA 92701
  907-271-2344 (fax line)      JVS_Chambers@cacd.uscourts.gov

13

  Daniel.cooper@usdoj.gov

14

15

16 <u>**ELECTRONIC & U.S. MAIL**</u>
  Mr. Robert A. Long

17 P. O. Box 3526

18 Seward, Alaska 99664
  xtrapper@msn.com

19

20

21           <u> s/ Roman E. Darmer II </u>

22            Roman E. Darmer II

23

24

25

26

27 **LP**

28