NELSON P. COHEN
United States Attorney

DANIEL R. COOPER, JR.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
daniel.cooper@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:02-cr-0031-JVS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **UNITED STATES** |
| ROBERT A. LONG, | ) | **OPPOSITION TO MOTION** |
| | ) | **FOR MISCELLANEOUS** |
| Defendant. | ) | **RELIEF** |
| | ) | **[Docket 311]** |

Robert Long has filed at Docket 311 his Motion for Miscellaneous Relief.

Mr. Long's Motion is brought pursuant to this Court's Minute Order to Show

Cause at Docket 273.  This is the United States' Opposition to Mr. Long's Motion.

I.      Brief Procedural History.

Mr. Long brought a second petition for a writ of habeas corpus, which the Court denied.[1]  Mr. Long had also brought several other motions which remained to be addressed.  The Court therefore issued an order to show cause why those motions should not also be denied.[2]  Long responded to the order, and the United States also responded.[3]  Upon consideration of the pleadings, the Court entered its minute order at Docket 273 on the Order to Show Cause.

In the Court's Order, the Court concluded that reconsideration of the Court's earlier rulings on the §2255 motion and other ancillary motions was not warranted.  The Court then turned to the recusal issue  raised by Mr. Long for the first time in his response - that of previously unknown and undisclosed alleged misconduct of Judge Sedwick at trial.  The Court specifically disposed of Mr. Long's arguments and allegations that Judge Sedwick should have recused himself from the trial itself based on the fact that Judge Sedwick knew and worked with the victims in this case.  The Court stated, at footnote 2, page 2 of the Order:

> Similarly, it was well-known to Long that the underlying criminal

---

[1]  Motion at Docket 193; Order at Docket 237.

[2]  Order at Docket 239.

[3]  Long's Response at Docket 267; United States' Response at Docket 271.

case involved allegations of threats to fellow judges in a small
district.  (Long Response, p. 5 n.2.)  Assuming that this is a proper
basis for recusal (but see *Clemens v. United States District Court*, 428
F.3d 1175, 1180 (9th Cir. 2005), a motion on such a ground has
clearly been waived. *United States v. Conforte*, 624 F. 2d 869, 879-80
(9th  Cir. 1980).

The Court went on to conclude that it was necessary for an evidentiary hearing to

determine whether the alleged misconduct occurred, and if so, whether retroactive

disqualification of Judge Sedwick on the habeas petition is warranted.  The Court

ordered that the hearing be limited to the allegations made by Tina Crump in her

affidavit filed with Mr. Long's motion at Docket 193 (the "Crump Affidavit.").

The Court then ordered the parties to meet and confer on issues related to

such a hearing.  The parties abided by the Court's Order, discovery was had, and

the evidentiary hearing took place on June 1, 2007 before this Court.  At the

conclusion of the hearing,  the Court ordered additional briefing - Mr. Long's

Motion at Docket 311, and this Opposition are in response to the Court's order at

the conclusion of the evidentiary hearing held on the facts of the Crump Affidavit.

II.    <u>Standard of Review</u>.

The parties at the evidentiary hearing disputed whether Mr. Long bears the "burden of proof" in this case, and if so, what that burden is.[4]  Mr. Long has now briefed the issue, and concludes that because 28 U.S.C. §455 ". . . imposes an objective standard, *neither* the government *nor* the defendant bears the burden of proof in a motion for recusal.   'Recusal under section 455 is to be judged on the record.' "[5] That formulation, however, is not quite complete, as discussed more fully below.

28 U.S.C. § 455(a) provides that "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  However, ". . . [i]n the absence of a legitimate reason to recuse himself, a judge has a duty to sit in judgement of all cases appearing before him."[6]

---

[4]   Also referred to by the government as "the burden of persuasion."  Transcript of Evidentiary Hearing (Trans.)  p .4, ll. 1 - 4.  The Court disagreed with the Government's argument that Mr. Long had the burden of proof, because this is a recusal motion.  Trans.  pp. 94, l. 23 - p. 95, l. 6.  Later, Mr. Long agreed that he had the burden, at least of persuasion, on the recusal motion.  Trans. p. 109, l. 10 - p. 115, l. 14.  However, Mr. Long maintained that even if he failed to prove the factual allegation that the event alleged in the Crump affidavit occurred, he was still entitled to recusal because of the alleged appearance of impropriety.

[5]   Motion at Docket 311, p. 4, ll. 1 - 5. Emphasis in the original, citations omitted.

[6]   *United States v. Holland*, --- F.3d ---, 2007 WL 2472543, p. 11417(C.A.9 (Idaho) , (citations omitted).

In analyzing §455 motions, the Ninth Circuit employs an objective test utilizing a "reasonable person" standard.  A judge should recuse himself when  a reasonable person, informed of all the facts, might reasonably question the judge's impartiality.[7]  Analysis of § 455 claims are "fact driven, and as a result, the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue."[8]  For a § 455(a) motion to succeed, there must be a *factual* basis for doubting the judge's impartiality.[9]

Demonstrating actual bias is not a requisite element of a §455 claim.[10]

---

[7]  "In analyzing § 455(a) disqualification motions, we employ an objective test: 'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'"*Clemens v. U.S. Dist. Ct. For Cent. Dist. Of California*, 428 F.3d 1175, 1178 (9th Cir. 2005); citing *Herrington v. County of Sonoma*, 834 F.2d 1488, 1502 (9th Cir. 1987)(quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)).

[8]  *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999).

[9]  *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980) *cert. denied* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d. 470 (1980)(stating that 455(a) motions require establishing"a reasonable factual basis for doubting the judge's impartiality"); *See United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) ("In applying the test, the initial inquiry is whether a reasonable *factual* basis exists for calling the judge's impartiality into question.")

[10]  *Clemmons v. Wolfe*, 377 F.3d 322, 327 (3rd Cir. 2004).

What matters under § 455(a) is not the reality of bias but the appearance of bias.[11]

The appearance of bias must stem from facts; "Rumor, speculation, beliefs,

conclusions, innuendo, suspicion, opinion, and similar non-factual matters" are

not sufficient to support an inference of the appearance of bias necessary to

disqualify a judge,[12] nor is recusal appropriate upon unsubstantiated allegations of

bias or prejudice.[13]  Typically, a judge's partiality must be shown to be based on

information from extrajudicial sources, although sometimes, albeit rarely,

predispositions developed during the course of a trial will suffice.[14]  Mr. Long has

no made showing of an extrajudicial source.  To the contrary, his allegations are

all within the time frame of the trial.  Significantly, Mr. Long makes no argument

on this point.

Thus, the incompleteness of Mr. Long's formulation is shown: the recusal

decision must rest upon *facts*.  The objective standard of the reasonable person

---

[11] *Liteky v. United States*, 510 U.S. 540, 548 (1994) (stating that § 455(a) analysis requires an evaluation "on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance.")

[12] *United States v. Cooley*, 1 F.3d. 985, 993 (10th Cir. 1993)

[13] *United States v. Hines*, 796 F.2d 722, 729 (10th Cir. 1982) (stating "section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.")

[14] *Liteky v. United States*, 510 U.S. 540, 554-55 (1994)

may not be exercised in a void, but must be applied to a *factual* basis. Further,

generally, the conduct must be extrajudicial in nature, an element not addressed by

Mr. Long. All this leads to the question this Court must answer: Is the testimony

of Tina Crump — directly controverted as it is by the testimony of Judge Sedwick

and the written record of the trial — and whose testimony is unsupported by any

other evidence, sufficient to lead a reasonable person to believe that Judge

Sedwick acted in the manner which she describes? If so, did the conduct she

alleges she observed call in to question the impartiality of Judge Sedwick?

III.    <u>The Record</u>.

A.    <u>The Log Notes and Transcripts of the Trial</u>. The course of the trial

was recorded by Debbie Lyons, the Court's Electronic Court Reporter. Her

deposition has been filed with the Court, together with the exhibits  include all the

log notes and some, but not all, transcripts of the trial.[15] Those log notes and

transcripts establish the following:

  Mr. Long's  trial commenced on May 28, 2002, with jury selection,

---

[15] However, the last portion of Day 1 of the trial appears to be missing, commencing at
page 146. The United States is filing pages 146 - 148, which covers the balance of voir dire, as
Exhibit A to this Opposition. The United States is also filing the transcript of the first day of trial
numbered  pages 1- 1 through 1 - 67 (plus appendices), which covers opening statements and
direct examination of the first witness as Exhibit B to this Opposition. Exhibit A may also be
found in the record at Docket 258. Exhibit B may also be found in the record at Docket 93.

opening statements, and a portion of the direct examination of the Government's first witness.[16]  The second day of trial was May 29th, and the government concluded its case at about 2:04 p.m.  Mr. Long presented his only witness, Tina Crump, at about 2:20, and the evidence was closed at about 2:28.[17]  The third day of trial was May 30th, and on that day the jury heard closing arguments, was instructed, and then retired to deliberate at about 12:06 p.m.[18]  On the fourth day, the jury returned a verdict of guilty as to each of the three counts.[19]

The jury did not re-enter the jury box after they were instructed.

During the trial, the jury moved in and out of the courtroom on the following occasions:[20]

**May 28th**

| Jury panel in | 9:18 | |
| Jury panel out | 10:32 | Recess |
| Resume without jury | 10:51 | (Jury out) |

---

[16]  Lyon's Dep., Ex. 2, Log notes, pp. 1, 1 - 18.

[17]  Lyon's Dep., Ex. 2, Log notes pp. 1, 1 - 8.

[18]  Lyon's Dep., Ex 2., pp 1 - 2.

[19]  Lyon's Dep., Ex. 2., pp. 1, 1 - 2.

[20]  Compiled from Lyon's Dep., Ex. 2.

| | | |
|---|---|---|
| Jury in | 10:58 | |
| Jury out | 12:11 | Lunch |
| Resume without jury | 1:36 | (Jury out) |
| Jury in | 1:42 | |
| Jury out | 2:29 | Recess |
| Resume without jury | 2:53 | (Jury out) |
| Jury in | 2:57 | |
| Jury out | 4:32 | Recess for day |

**May 29th**

| | | |
|---|---|---|
| Jury in | 9:38 | |
| Judge in | 9:39 | |
| Jury out | 11:06 | Recess |
| Jury in    (Resume) | 11:24 | |
| Judge in | 11:25 | |
| Jury out | 12:01 | Argument  (Jury out) |
| Jury in | 12:13 | |
| Jury out | 12:14 | Lunch |
| Resume | 1:35 | (Jury out) |
| Jury in | 1:48 | |
| Jury out | 2:04 | Gov't rests, Arguments (Jury out) |
| Jury in | 2:19 | |

Tina Crump Sworn and Testifies

US v Long
3:02-cr-0031-JVS                    -9-

| | | |
|---|---|---|
| Jury out | 2:30 | (Parties argue jury instructions) |
| Recess for day | 3:56 | |

**May 30th**

| | | |
|---|---|---|
| Jury in | 10:45:09 | |
| Judge in | 10:45:23 | (Closing arguments and jury instructed) |
| Jury out | 12:06 | Jury deliberations |
| Court adjourned | 12:09 | |

**May 31st**

| | | |
|---|---|---|
| Jury in | 11:25 | Verdicts read at 11:11:28, jury excused at 11:31 |

On May 28th, the jury left the room three times; for morning recess, for lunch, and for afternoon recess. On all three occasions, the court resumed proceedings without the jury present, and took up matters outside the presence of the jury. Thus, on all three occasions, the court was in session with all the parties and the judge present before the jury entered to the room. Whatever Tina Crump thinks she saw, it could not have occurred on May 28th, because the parties were present at all times when the jury entered the courtroom.

On May 28th, just as the Government called the first witness, *a juror asks a question*. The juror wants to know, "Do we get those notebooks now?" The court

US v Long
3:02-cr-0031-JVS                    -10-

responds, "Yes, she should be giving them to you."[21]   This is apparently in response to the court telling the jurors to pay close attention, which came immediately after the instruction that the court would not communicate with the jury in any manner other than a written communication.[22]

On May 29th, the jury left the courtroom four times: for morning recess, for arguments by the parties just before lunch, for lunch, and for arguments after the government rested but before Tina Crump took the stand to testify.  After morning recess, the jury entered before the judge, so the judge and the jury were not alone then.  Likewise, when the jury left the courtroom for the arguments at 12:01, the parties remained with the judge and made their arguments until the jury came back at 12:13, at which time they were excused for lunch.  Once again, all the parties were present as is clear from the log notes and the trial transcript.  After lunch, the parties resumed argument without the jury present until about 12 minutes later. The judge and jury could not have been alone together then either, because the parties commenced testimony right away after the jury came in.  The next break took place at 2:04, after the Government rested, during which the Rule 29 motion

---

[21]  Exhibit A to this Opposition, p. 1-34, l . 9 - 24.

[22]  Exhibit A to this Opposition, p. 1-10, ll. 12 - 24.

was argued.[23]  Mrs. Crump was apparently there during the argument, and the jury was brought in at 2:19, just before she testified.[24]  The jury was excused at 2:30 for the day, and the parties argued jury instructions until adjournment.

Once again, there was no time at all when the judge was alone in the courtroom with the jury.  At the end of the first break, the jury came in first, followed by the judge.  For the lunch break, the jury left first, then the parties.  Likewise, after lunch, the parties were in the courtroom before the jury came in.  Finally, during the jury's afternoon break, the parties and the judge never left the courtroom.  Whatever Tina Crump thinks she saw, it did not happen on May 29th, the second day of trial.

On May 30th, The jury came in to the courtroom first, and then the judge came in.  The jury heard final arguments without any breaks, and were excused to deliberate while the judge and the parties remained.  The judge and the jury were never alone in the courtroom together, and whatever Tina Crump thinks she saw, it did not occur on May 30th.

---

[23]  *See also*, Lyons Dep., Ex. 4, pp. 2-131 - 142

[24]  *Id*. at 2-142.

US v Long
3:02-cr-0031-JVS                    -12-

Finally, on the last day of trial, May 31st, the parties assembled in the courtroom at 9:51 with the judge because of a jury note.[25]  The jury came in with their verdict at 11:25.  After reading the verdicts and being polled, they were excused at 11:31.[26]  The judge and the jury were never alone on May 31st.  Whatever Tina Crump thinks she saw, it did not occur on May 31st.

B.    Witness Testimony.

At the alleged event described by Tina Crump, there were 18 or 19 witnesses: Tina Crump, 12 jurors plus 2 alternate jurors, Debbie Lyons (the court reporter),  Judge Sedwick, and two court security officers.  Several witnesses testified at the evidentiary hearing held by this Court, and the remainder (of those who could be found) through deposition testimony, some of which has been provided to the Court.

1.    Judge Sedwick testified *unequivocally*[27] that there was never a time when he was in the courtroom with the jury present but without the defendant

_____

[25]  Lyons Dep., Ex. 6, p. 4-3 - 8.

[26]  *Id.* at 4 - 13.

[27]  The Court will recall from Judge Sedwick's demeanor in the witness stand that "adamantly" is also an appropriate description of Judge Sedwick's testimony and demeanor.

and counsel present.  Moreover, he testified that it was against his practice for that to ever happen.[28]

      2.      The court security officers who could be found testified that they had little if any recall of Mr. Long's trial.[29]  However, those who were asked could not recall ever, any instance of seeing a judge alone in a courtroom with a jury.[30]

      3.      The jury members who could be found testified uniformly that they did not recall being present in the courtroom with the judge but without the defendant.  To the contrary, to the extent each of them could recall, they testified that every time they were in the courtroom, Mr. Long was sitting there with his lawyer.  Their testimony is summarized as follows:

| Juror | Judge and Jury Together w/out Counsel; or w/out Mr. Long? | Juror asked a question about Mr. Long's mental state or about packet? | Did Juror Communicate with Judge w/out presence of counsel? |
|---|---|---|---|

---

[28]  Trans., p. 102.

[29]  Motion at Docket 311, pp. 6 - 7.

[30]  Reinhardt Dep., p. 8; McGowan Dep. p. 6, l. 16 - p. 8, l. 16; Kimball Dep. p. 10, l. 23 - p. 15, l. 1; Campbell Dep.  P. 6, l. 5 - p. 7, l. 19; White Dep., p. 8, ll 1 - 9; McMorrow Dep., p. 6, l. 4 - p. 7, l. 23.

| Richard **Porter** (foreperson) *Direct* | " I don't believe so."(p.7, l. 7) | " I don't think that happened at all." (p.8, l. 7) | "No." (p. 8, ll. 18 - 20) |
|---|---|---|---|
| *Cross* | | " I don't remember or recall any communications outside the room other than through me" (p. 10, ll. 14-15) | " I don't recall that happening" " I don't think it did" (p. 10, l. 23 - p. 11, l. 1) |
| Mary **Lutrick** *Direct* | "Not that I recall" (p. 15, l. 1) | "That could've been possible" (p. 15, l. 9) "The topic of mental illness might have come up... I'm not sure if it was within the jury room or within the open court" (p. 16, ll. 7-10) | |
| *Cross* | "No." | "There was a question about a packet." (p. 18, ll 21-22)  " I believe there was a discussion about a packet." (p. 21, l. 18) *On redirect:* "I believe there was just a question." | |

| | | (p. 22, l. 5) Does not remember when the question was asked | |
|---|---|---|---|
| Jeanette **Hancock** *Direct* | "No, I can't recall." (p. 24, l. 18) | "I can't recall." (p. 25, l. 5) | |
| Edna **McGinty** *Direct* | "Not that I remember." (p. 29, l. 2) | "I remember somebody asking a question about a packet, but I don't remember if it was in court or if it was in –in the other room" (p. 29, ll. 12-14) "It was one of the males." (p. 29, l. 23) The question arose when "they were having a disagreement...the men versus the women...where the jury goes." (p. 30, ll. 9-15) **Question about Long's mental state:** "I don't remember that."(p. 32, l. 8) | When the packet or documents were discussed in open court: "everybody was present." (p. 31, l. 19) |

| | | | |
|---|---|---|---|
| *Cross* | "No."<br><br>Q: And at all times that Mr. Long was in the courtroom, was he accompanied by his lawyer?"<br><br>A: "Yes" (p. 34, ll. 21-23) | | |
| Dawn **Brickel**<br>*Direct* | "Not that I recall." (p. 37, l. 6) | "I don't remember." (p. 37, l. 13) | "Not that I recall, but I don't remember." (p. 37, l. 20) |
| James **Burnett** III (alternate juror)<br>*Direct* | "I do not recollect a time." (p. 41, l. 12) | "Not to my recollection, no." (p. 41, l. 18) | "No, sir, not without counsel being there, no." (p. 42, l. 9) |
| *Cross* | Q: there was always someone sitting next to Mr. Long?<br><br>A; "That is correct." (p. 44, l. 21) | | |
| Rebecca **Mahaney**<br>*Direct* | "I don't recall." (p. 47, l. 7) | "I don't recall a packet. I know that there was a question asked of the judge." (p. 48, ll. 8-10) | "No. " (p. 49, l. 19) |

| | | | |
|---|---|---|---|
| *Cross* | "I don't recall that he (Mr. Long) was ever alone." (p. 52, l. 22) | The question asked was in the form of a note sent by the jury to the judge. Does not remember any other questions being asked of the court.  (p. 53, ll. 22-23) | |
| James **Moore**<br><br>*Direct* | "Not that I recollect."  (p. 57, l. 1) | "I do not remember." (p. 57, l. 9) | |
| Robert **Garrett** Jr.<br><br>*Direct* | "I don't recall" | "I don't recall" | "I don't recall" |
| *Cross* | States that he never saw the judge in the jury room. | States that the jury communicated a question to the judge from the jury room. (p. 66, ll. 13-14) | |
| Melanie **Gjosund**<br>*Direct* | "I don't know.  I don't remember." (p. 69, l.16) | "I don't recall." | "I don't believe so." |
| Timothy **Tucker**<br>*Direct* | "I don't believe so." (p.74, l. 20) | "I don't believe so."<br><br>No specific recollection of coming into the courtroom and | |

| | | Mr. Long not being at the table. (p.79, ll. 1-4) | |
|---|---|---|---|
| Robert **Price** <br> *Direct* | Didn't serve on the jury | | |
| James **Renk** <br><br> *Direct* | "whenever we were there, everybody was there." (p. 87, l. 17) | "We asked for instructions from the judge once, but we were not in the courtroom at that time.." (p. 88, ll. 5-6) | |

Not one of the jurors corroborates the story related by Tina Crump. A few jurors recall a question about a packet, fewer still an issue concerning the mental state, and none of them recall being alone in the courtroom with Judge Sedwick.

      4.    The Electronic Court Reporter, Debbie Lyons, testified that, after she was taken through her log notes, she could not identify any time when the judge and the jury were alone in the courtroom without the parties being present.[31]

      5.    Tina Crump testified in this matter in three ways: the affidavit, her deposition, and her testimony at the evidentiary hearing. She also made a statement to the FBI and Marshal's Service concerning the affidavit.

---

[31] Lyons dep., p. 57, l. 2 - p. 79, l. 3.

a.  The Affidavit.  The affidavit[32] says:

- in the trial

- on a day I'm not sure of

- a recess had been called

- Mr. Long and his attorney were gone

- I sat for a short time outside the courtroom

- I reentered the courtroom to wait for Mr. Long and Mr. Dieni

- I believed the room would be empty

- I was surprised to find the jury, Judge Sedwick and the two guards in the courtroom

- The jury was asking the judge questions about the trial and the law

- Judge Sedwick was answering them

- I thought this strange

- I did not tell anyone

- At the end of February, first of March, 2005, I heard something that recalled this to my memory, and so I told Mr. Long

- During the trial, Judge Sedwick and the jury were engaged in conversations regarding the matters of the trial, questions regarding the facts, Mr. Long's mental state, and questions of the law that applied, and others

---

[32] Exhibit A at the evidentiary hearing.  The affidavit itself is dated May 15, 2005.

- Mr. Long, Mr. Dieni and Mr. Cooper were not there

- After the talk between Judge Sedwick and the jury took place, others came in and the trial resumed.

      b. <u>The Statement to the FBI and Marshal's Service</u>.  On November 4, 2005, Tina Crump was interviewed by Special Agent Steve Payne of the FBI, and Deputy U.S. Marshall James "Sonny" Caudill.  In that interview she stated:[33]

- The events described in her affidavit occurred before she testified at trial. (Page 1, third paragraph)

- She thought the events took place at the beginning of the trial, probably the first day, but she can't be sure.

- She observed the event when she returned early from a break.

- The jury was seated, and it looked like the judge had just entered the room, and was walking towards his seat on the bench.  (Second page, beginning at the top of the page)

- The courtroom guards were present, but Mr. Long was not present, nor were the attorneys.

---

[33] These excerpts are taken from the FBI Form 302 prepared by Special Agent Payne and attached to his deposition as Exhibit 1.  The Exhibit is attached to the United States' Deposition Designations.

- A female member of the jury, believed to be blond, raised her hand and asked the judge a question.

- The question was "What do we do with this packet?" or words to that effect.

- The judge answered "Just read through them and follow the instructions."

- The attorneys and Mr. Long returned to the courtroom.

- One of the jurors asked the judge about Mr. Long's mental state.

- She does not remember when this occurred, but is sure it happened during a break when Mr. Long and the attorneys were not present.

- The judge answered as he had before, "Follow the instructions in your packet."

- She stated she did not observe the judge say anything about Mr. Long or the proceedings other than as stated above. She did not believe that the judge's comments were inappropriate or meant to influence the jury in any way.

      c. <u>The Deposition on May 9, 2007</u>. Tina Crump also provided a sworn deposition to the parties in this matter. In her deposition, she testified essentially the same as in her statement to the FBI and U.S. Marshal's Service, with the following exceptions:

- And they [the juror] asked, you know, are we supposed to be, you know – are we supposed to be evaluating him on his mental status? What are we supposed

to do? And the judge basically said, you have a packet, refer to your packet, you know, and that's it (p. 12, ll. 8 - 14; p. 18, l. 24 - p. 19, l. 3).

- There were a couple of other people in the courtroom, too (p. 15, l. 20 - p. 16, l. 10; p. 19, ll. 8 - 25 ).

- The juror who asked the question was a male (p. 24, ll. 20 - 23; p. 92, ll. 7 - 12).

- The jury asked for the whole transcript instead of little excerpts (p. 25, ll. 4 - 13).

- Her memory of the events of the first day of trial, including jury selection and opening statements is vague and fragmentary (p. 51, l. 2 - p. 57, l. 2), and she paid attention only to the parts she was interested in ( p. 54, ll. 4 - 18).

- She had no recollection of her order of testimony in the trial (p. 59, ll. 3 - 15).

- She is pretty sure that the events occurred *after* she testified at trial (p. 88, ll. 11 - 19), but she is not positive  (p. 90, ll. 12 - 23).

- She believes the juror's question on Mr. Long's mental state comes from

the prosecution's mis-characterization of Mr. Long as a dangerous man (p. 92, l. 15 - p. 93, l. 16).

- She believes that she was not asked enough pertinent questions to aid the defense in her testimony (p. 59, l. 16 - p. 60, l. 11; p. 61, ll. 7 - 10), and that Mr. Long was denied the opportunity to put on an effective defense when his witnesses were excluded  (p. 60, l. 12 - p. 62, l. 13).

    d. <u>Tina Crump's Testimony at the Evidentiary Hearing</u>.  Tina Crump also testified at the evidentiary hearing.  At the evidentiary hearing, she testified that the order of events was she came into the room and sat down, and one of the jurors raised their hand "and was asking about Mr. Long's mental status" and the judge referred them to their packet.[34]  This was the "conversation" to which she referred in her affidavit.[35]

    There was another time when a person wanted the whole transcript, because parts of the evidence were missing, only excerpts were being presented.[36]   The court once again referred them to the packet.  Mrs. Crump testified specifically

---

[34]  Trans. p. 125, ll. 8 -17.

[35]  Trans. p. 126, ll. 6 -14.

[36]  Trans. p. 127, ll. 5 - 24; pp 146, l. 13 - p. 149, l. 25.

that she heard a person say "Could we look at the whole document?" while evidence was being presented.[37]

Mrs. Crump was unable to remember details of the trial including the second lawyer assisting Mr. Dieni,[38] the dates of the trial,[39] the day of the trial she testified,[40] or in reality, any clear details at all of what occurred.[41]  Indeed, she was unable to remember any significant detail of the events leading up to the preparation of the affidavit.[42]

Mrs. Crump was dissatisfied because she was not allowed to testify fully about Mr. Long.[43]  She was also dissatisfied because others, who she describes as

---

[37]  Trans. p. 149, ll. 8 - 15.

[38]  Trans., p. 138, ll 14 - 23, but compare, Lyons Dep., Ex. 3, p. 21, ll. 19 - 25, wherein Mr. Dieni introduces himself and M.J. Haden.

[39]  Trans., p. 139, ll. 14 - 17.

[40]  Trans. p. 141, ll. 20 - 21.

[41]  Importantly, she can not testify at all with respect to the day of the trial on which these alleged events occurred.  Trans. p. 155, ll. 17 - 19.

[42]  Trans. p. 171, l. 4 -  p. 176, l.14.

[43]  Trans. p. 140, ll. 20 - 25.

character witnesses for Mr. Long, were not allowed to testify.[44] Overall, she was

unhappy that Mr. Long was not able to provide a proper defense.[45]

Mrs. Crump also testified that she believed the events she is relating

occurred at a recess, not a lunch break.[46]

Mrs. Crump takes issue with the characterization of Mr. Long as being

dangerous or unstable.[47] She specifically does not believe that Mr. Long ever said

anything to any person about Timothy McVeigh, notwithstanding trial testimony

to the contrary.[48] However, the purpose of her coming to testify was to help Mr.

Long in his defense, as was the testimony of those witnesses who were excluded

by the court.[49]

IV.    <u>Argument</u>.

A.  <u>The Alleged Events Did Not Occur</u>.

---

[44] Trans. p. 142, l. 7, p. 143, l. 6; p. 169, l. 5 - p. 170, l. 1.

[45] Trans. p. 162, l. 22.

[46] Trans. 150, l. 24 - p. 152, l. 3.

[47] Trans. p. 157, ll. 8 - 25

[48] Trans. p. 158, l. 1 - p. 159, l. 9; *But see*, Lyons Dep., Ex 4, p. 2-124, l. 14 - p. 2-126, l. 9.

[49] Trans. p. 182, l. 25 - p. 184, l. 20.

The logs and transcripts of the trial prove conclusively that the events alleged by Tina Crump did not occur.  Mrs. Crump says the events occurred after a break.  There were two breaks on the first day of trial.  After both breaks, the parties resumed with the court without the jury present, and the jury came in seven minutes later in the morning, and five minutes later in the afternoon.

On the second day of trial, there were two breaks in the morning.  At the first break, the jury came in first, and then the judge came in.  At the second morning break, the jury was excused at 12:01 so the parties could argue.  The parties were still there when the jury came back in and were excused for lunch.  Likewise, in the afternoon break, the parties remained in the courtroom and argued while the jury was in the jury room.  The parties were all there when the jury came back in and the trial continued.

On neither of these two trial days was there a moment at or near a break where the judge and jury *could* have been alone together.  In fact, they never were.  This record, both the log notes and the trial transcripts, prove that the alleged events did not occur.

Mrs. Crump's testimony is incredible.  As set forth in detail above, her testimony of what she alleges transpired in the courtroom between Judge Sedwick

and the jury morphed and changed dramatically over time.  Initially, it was non-specific, as related in the affidavit.  She referred there to "conversations" on the facts, and Mr. Long's mental state, and the law.  When interviewed by the agents, it became a blond woman asking "What do we do with these packets?" and a question about Mr. Long's mental state.  By deposition time, she stated it was a man asking the questions, admitted that there were no conversations, omitted any mention of "what do we do with these packets?", and added a new factual allegation: that *she heard* the jury ask if they could have the full documents entered into evidence, and not just the excerpts.[50]

This last allegation is very troubling, for at least two reasons: First, because it was brought *for the first time* almost exactly five years after the trial, and second, because it is patently untrue.  In her testimony, Tina Crump states that the question was asked by the juror while the evidence was being presented in open court.  That question by a juror (or anyone else) appears no where in the trial transcript.  The testimony of Tina Crump on this point, either mistaken or intentional, is demonstrably false by reference to the written and audio record.  If she makes the statement based on some mistaken belief that she heard this juror

---

[50]  By the time she was deposed, and three weeks later testified at the evidentiary hearing, her story had little relation to the affidavit, and even less to her statement to the agents.

comment, her sworn testimony is, perhaps excusable.  However, if she makes the statement knowing that her statement is false, even if her motivation is, in her view, an honorable motivation, the action of making the statement as well as the statement itself is offensive.

Mrs. Crump's testimony is also incredible because of the obvious, undisguised bias in favor of Mr. Long.  Her testimony is full of "I don't recall" statements regarding the "when" of these alleged events, or of the conduct of the trial, or of anything other than her opinion that Mr. Long did not receive a fair trial.  She also is of the transparent view that the government wrongfully charged Mr. Long, and viciously accused Mr. Long of being dangerous.  However, Mrs. Crump can not tell the Court when the Government's statements were made, if made at all, or whether they occurred in a detention hearing (an element of which, of course, is arguing about the defendant's danger to the community) or the trial. In sum, her opinion (of unfairness of this trial to Mr. Long) outweighs her ability to recall accurately in time or place a single pertinent fact concerning the trial of this case.  It is Tina Crump's opinion of the unfairness of Mr. Long's trial that seemingly provides the motivation for her allegations.

Is there some truth, any truth at all, in what Mrs. Crump has alleged?  Only

this: that the first day of trial, as the first witness was being sworn, a juror asked a question. That is it, the sole foundation for any of these allegations. The rest, particularly any allegation that the jury, in open court while being shown the evidence, asked for the complete documents, is false. While it is clear that the statements were made to influence this Court, and to assist Mr. Long in his efforts to set aside his convictions, it is less clear that the statements were made with a particular animus. They must, however, have been knowingly made, and made with the knowledge that they were false at the time they were made. Even if, in the beginning, Tina Crump mis-remembered or conflated a juror's question about a notebook, her allegations have grown and changed to demonstrably false claims.

The balance of the witnesses do not support Mrs. Crump. The witness with the sharpest recall of the events, Judge Sedwick, states adamantly that the events alleged by Mrs. Crump did not occur. Every other witness is hazy or fuzzy, and can only speak in generalities or with imperfect recall. Not so Judge Sedwick. If these events had occurred, and they did not, he is alleged to have been an actor in them. He states flatly that he was never alone with that jury, and it is never his practice to be alone with any jury.

Moreover the court security officers, who are always present when a judge

is in the courtroom, testified that they never saw it, and such an event would be so unusual that they would report it.  This alone casts serious doubt on the testimony of Mrs. Crump, who consistently testifies that two of them were present in the courtroom.

No reasonable person could conclude, on this evidence, that the events alleged by Mrs. Crump occurred, much less in the fashion she states.  Thus, there is no factual basis for a reasonable person to conclude that Judge Sedwick's impartiality might reasonably be questioned.  Mr. Long appears to argue that the allegations, even if unsupported, support an inference of the appearance of impartiality.[51]  That argument is illogical.

Suppose, in this trial, Mr. Long appeared everyday in long hair, drawn back in a pony-tail, which he did.  Suppose further that a supporter of Mr. Long came forward some time after the trial, and said "Sometime during the trial, I can't remember which day, I heard Judge Sedwick tell the jury he can't stand men who have long hair."  Suppose further that, upon close examination, the witness' story falls apart, and is proven to be not only unreliable, but false as well.  Is there then, an appearance of impropriety?  The proof of the alleged act has failed, how then

---

[51]  Motion at pp. 10 - 11.

can an appearance of impropriety spring from a non-event?  The United States

submits that an appearance of impropriety can *only* come from, spring from, or

result from, some act or speech that has been *proved*.  That is why the law

prohibits a finding of judicial misconduct based upon speculation, innuendo and

the like.[52]  There must be a factual basis for an allegation of even the appearance

of impropriety, and there is no factual basis in this record to support the

allegations of Tina Crump.

> B.    <u>Even if the Alleged Events Occurred (And They Did Not) There is No
> Evidence of Partiality</u>.

Assuming for the sake of argument that Mrs. Crump saw one of the events

she alleged occurred, by her owns words there was no improper conduct.  She

states unequivocally that she saw nothing wrong.  That of course, is subjective, so

turning to the objective standard, the reasonable person test, where can fault be

found when a judge tells a juror "Follow the instructions in your packet?"  There

is no bias or appearance of impropriety in telling the juror to follow the law.  If

Judge Sedwick had said "I'll tell you later," or "I'll give you some additional

instructions later," or anything *BUT* "follow your instructions," there may have

---

[52] See, footnote 9, supra.

been an appearance of impropriety. But on the sole testimony of Mrs. Crump, if it had occurred as she alleges it did, there was no impropriety, nor an appearance of impropriety, and the motion must fail for this reason as well.

C.    <u>Any Argument Outside the Scope of the Crump Affidavit is Improper and Impermissible at This Time</u>.

The Court's Order that initiated the further investigation and evidentiary hearing on the Crump Affidavit specifically limited the evidence and argument to the sole issue of the facts alleged in the affidavit. At Docket 273, page 3, the last sentence of the first paragraph, the Court stated:

> The hearing will be limited to the allegations made by Tina Crump in her affidavit accompanying Long's motion at docket 193.

Notwithstanding the specific order of the Court, Mr. Long renews his argument that Judge Sedwick should have recused himself because the Court for the District of Alaska is small, and Judge Sedwick had a relationship with Judges Singleton and Roberts.[53] This argument is outside the scope of the Court's Order and has previously been ruled upon by this Court as having been waived.[54] To the extent

---

[53] Motion, pp. 14 - 18.

[54] The portion of the Court's order at Docket 273 denying this argument is found at page 2 of the Order, in footnote 2.

necessary, the United States restates and relies upon its points and authorities set forth in its Response to Order to Show Cause filed at Docket 271.

V.     Conclusion.

Mr. Long has failed to establish a factual basis that there was any judicial conduct that showed bias or impropriety, or the appearance of bias or impropriety. Thus, in the absence of a factual basis, no reasonable person could conclude that Judge Sedwick's impartiality might be questioned.  Moreover, even if the allegations made by Tina Crump were true, and they are not, the conduct she alleges was not improper, and could not lead to a finding by a reasonable person that Judge Sedwick's impartiality was brought into question.  Finally, the Court has already ruled on Mr. Long's remaining argument concerning recusal, and that argument was waived.

For the foregoing reasons, the United States asks this Court to rule that there is no reason for recusal by Judge Sedwick, and dismiss the remaining motions and all other pending matters in Mr. Long's petition.

RESPECTFULLY SUBMITTED on October 15, 2007.


NELSON P. COHEN

United States Attorney


s/ Daniel R. Cooper, Jr.

Assistant U. S. Attorney

222 West 7th Ave., #9, Rm. 253

Anchorage, AK 99513-7567

Phone: (907) 271-3376

Fax: (907) 271-2344

E-mail: Daniel.Cooper@usdoj.gov

AK #8211109


**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2007, a copy of the foregoing **UNITED STATES OPPOSITION TO MOTION FOR MISCELLANEOUS RELIEF** (Docket 311) was served electronically on Roman E. Darmer II.


s/Daniel R. Cooper Jr.


US v Long

3:02-cr-0031-JVS                          -35-