NELSON P. COHEN
United States Attorney

DANIEL R. COOPER, JR.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
(907) 271-5071
daniel.cooper@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:02-cr-0031-JVS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **UNITED STATES** |
| | ) | **DESIGNATIONS OF** |
| ROBERT A. LONG, | ) | **ADDITIONAL TESTIMONY** |
| | ) | **FOR COMPLETENESS** |
| Defendant. | ) | |
| | ) | |

Robert Long, through counsel, previously submitted his Deposition

Designations, which are set out below in the column captioned "Petitioner

Designations." The United States now submits additional designations, which are

set out in the column captioned "Designations of Additional Testimony for

Completeness." True and correct copies of the designated excerpts are attached

hereto as Exhibit A.

| Petitioner Designations | Government Objections | Government Counter-Designations | Petitioner Objections to Counter-Designations | Designations of Additional Testimony for Completeness |
|---|---|---|---|---|
| **Campbell:** 4:11-17, 4:24-5:2, 7:20-8:25 | | | | 6:5 - 7:19 |
| **Caudill:** 4:18-25, 5:13-25, 6:1-5, 6:12-25, 7:14-25-8:3, 8:6-9:9, 10:1-12:5, 13:7-15, 13:21-15:4, 15:20-16:18, 16:19-17:12, 19:1-21:12, 23:2-23:14, 24:8-16, 24:25-25:15, 27:2-28:4, 28:15-32:13, 32:14-33:10, 34:19-38:23 | | | | |
| **Crump:** 5:20-21, 6:6-25-7:2, 7:3-22, 7:23-8:4, 9:10-11:18, 11:19-13:6, 13:13-17, 14:6-17, 14:18-19:3, 22:3- | | | | |

| Petitioner Designations | Government Objections | Government Counter-Designations | Petitioner Objections to Counter-Designations | Designations of Additional Testimony for Completeness |
|---|---|---|---|---|
| 23:13, 24:5-25:19, 25:20-26:3, 26:4-26:19, 27:11-28:11, 17-22, 28:23-29:13, 29:18-30:4, 32:19-33:18, 33:19-35:24, 36:3-22, 37:6-19, 37:20-38:22, 39:2-40:22, 40:23-42:3, 90:12-91:13, 94:9-23, 94:24-95:19 | | | | |
| **Dehart:** 4:14-20, 5:10-6:13, 9:10-10:1 | | | | |
| **Kimball:** 4:14-20, 5:4-25-6:2, 6:3-8:12 | | | | 10:23 - 15:1 |
| **Lyons:** 5:18-23, 6:2-12, 7:4-13, 7:14-23, 8:1-12:9, 15:9-21, 23:2-24:17, 26:7-29:24, | | | | 57:2 - 79:3 |

| Petitioner Designations | Government Objections | Government Counter-Designations | Petitioner Objections to Counter-Designations | Designations of Additional Testimony for Completeness |
|---|---|---|---|---|
| 31:13-32:10, 34:1-35:2, 35:15-20, 36:1-22, 43:17-44:6, 44:18-25, 45:5-10, 47:23-26, 48:1-49:16, 50:21-51:19, 54:7-13 | | | | |
| **McGowan:** 4:15-17, 5:2-11, 6:6-16 | | | | 7:1 - 8:16 |
| **McMorrow:** 4:25-5:7 | | | | 6:4 - 7:23 |
| **Otte:** 4:9-16, 13:18-24, 15:12-17 | | | | |
| **Payne:** 4:13-21, 6:17-7:10, 8:11-17:4, 17:12-18:4, 18:5-11, 19:25-20:15, 21:12-22:25, 23:1-18, 23:19-25:1, 26:3-11, 27:16-29:15, 29:16-31:9, 31:19-32:21, | | | | Exhibit 1 to Deposition |

| Petitioner Designations | Government Objections | Government Counter-Designations | Petitioner Objections to Counter-Designations | Designations of Additional Testimony for Completeness |
|---|---|---|---|---|
| 34:7-35:12, 36:2-5, 37:11-13, 38:7-19 | | | | |
| **Potts:** 4:16-22, 5:22-6:8, 6:12-25, 7:1-11:16, 12:5-13:24 | | | | |
| **Reinhardt:** 4:24-5:8, 8:19-9:16, 10:4-13 | | | | 8:2 - 11 |
| **Singleton:** 4:6-5:20 | | | | |
| **Snedden:** 4:22-25, 5:1-6:5 | | | | |
| **White:** 5:20-7:15, 8:1-13 | | | | |

RESPECTFULLY SUBMITTED on October 15, 2007.

NELSON P. COHEN
United States Attorney


s/ Daniel R. Cooper, Jr.
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3376
Fax: (907) 271-2344
E-mail: Daniel.Cooper@usdoj.gov
AK #8211109


**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2007,
a copy of the foregoing **UNITED STATES**
**DESIGNATIONS OF ADDITIONAL**
**TESTIMONY FOR COMPLETENESS**
was served electronically on Roman E. Darmer II.

s/ Daniel R. Cooper, Jr.

6

1              UNITED STATES DISTRICT COURT
                    DISTRICT OF ALASKA
2

3    UNITED STATES OF AMERICA,       )
                                     )
4              Plaintiff,            )
                                     )
5         vs.                        )
                                     )
6    ROBERT A. LONG,                 )
                                     )
7              Petitioner.           )
     _____)
8    Case No. 3:02CR-0031-JVS;
     Case No. 3:04CV-00286-JWS
9

10   _____

                 DEPOSITION OF JOEL CAMPBELL
11   _____

12

13                   May 10, 2007
                      9:26 a.m.
14

15                   Taken at:
          United States District Courthouse
16        222 West 7th Avenue, Courtroom 4
                 Anchorage, Alaska
17

18

19

20

21   Reported by:  Leslie J. Knisley
                    Shorthand Reporter
22

23

24

25

1        Q     And sometimes in trials presided over

2    by Judge Sedwick?

3        A     Sometimes.  You didn't get a chance to

4    pick who your judge was.

5        Q     Right, I'm sure that's the case.

6              This is a broad question as to

7    any of the trials you were in, including those

8    that were presided over by Judge Sedwick.  Did

9    you ever see an instance in which the judge was

10   interacting with the jurors in a situation where

11   counsel for the parties was not also present?

12       A     No, sir.  Never.

13       Q     Would that strike you as somewhat

14   unusual?

15       A     Well, I'd have to report it.

16       Q     Okay.  And who would you report it to?

17       A     I would report it to my immediate

18   supervisor and then probably have to write up a

19   report, and he would handle it from there.

20       Q     Was your supervisor Mr. Potts?

21       A     Yes, it was.

22       Q     And what's the basis for the need to

23   report?  Is that some rule or policy that would

24   cause you to have to make that report?

25       A     That's just a policy.  It's something

1    that isn't done.  Judges don't got to juries

2    while they're impounded as a jury.  I mean, it

3    just doesn't happen.

4         Q    And you've never heard of that

5    anecdotally or informally, you know, whether

6    officially or unofficially, never heard of that

7    happening in this courthouse?

8         A    Not that I know of.

9         Q    And did you ever in the time that you

10   served as a court security officer have occasion

11   to make reports of unusual activities in the

12   courtroom to your supervisor?

13        A    Not in the courtroom, no.  I arrested

14   a guy one time and of course that takes a

15   report.

16        Q    I see.  So anything -- essentially

17   something unusual, out of the ordinary would

18   lead to a report or a --

19        A    That's correct.

20        Q    Okay.  And, again, you indicated you

21   don't have any specific recollection about

22   Mr. Long's trial or even whether you sat in it

23   at any point?

24        A    I couldn't tell you.  I mean, I

25   remember the name.  When it happened, I couldn't

1            UNITED STATES DISTRICT COURT
                 DISTRICT OF ALASKA
2

3   UNITED STATES OF AMERICA,        )
                                     )
4            Plaintiff,              )
                                     )
5        vs.                         )
                                     )
6   ROBERT A. LONG,                  )
                                     )
7            Petitioner.             )
    _____    )
8   Case No. 3:02CR-0031-JVS;
    Case No. 3:04CV-00286-JWS
9

10  _____

                DEPOSITION OF SHANON KIMBALL
11  _____

12

13                  May 9, 2007
                    2:02 p.m.
14

15                   Taken at:
          United States District Courthouse
16         222 West 7th Avenue, Courtroom 4
                 Anchorage, Alaska
17

18

19

20

21  Reported by:  Leslie J. Knisley
                  Shorthand Reporter
22

23

24

25

1       A    Yes.

2       Q    What I'm trying to get at is, is it a

3    new document prepared for each day, or is it

4    kind of the old one from yesterday with the

5    information overlaid or items deleted?

6       A    We have a new schedule come out every

7    day and court time is input every day when the

8    court docket comes down from the clerk's office.

9       Q    Okay.  And I take it you don't

10   personally have information as to whether or not

11   those electronic versions of the court schedules

12   are maintained on that computer?  The lead CSO's

13   computer.

14      A    As far as my knowledge, the scheduling

15   itself is maintained on his computer; the court

16   schedule is not.

17      Q    Right.  Were there any different or

18   extra security measures undertaken in connection

19   with Mr. Long's trial, as opposed to your

20   ordinary operating procedure because of the

21   nature of the trial?

22      A    Not that I can remember.

23      Q    And do you recall anything about a

24   time when the judge, in that case Judge Sedwick,

25   was having communication with the jury outside

1    of the presence of the lawyers and Mr. Long?

2         A    Absolutely not.

3         Q    Is there any -- are you aware of any

4    written policy or other policy in this

5    courthouse which -- that would prohibit such an

6    encounter between a judge and a jury in the

7    absence of the counsel in a particular case?

8         A    There's written notices inside the

9    jury rooms and also we are posted outside the

10   door when the jury is deliberating, and nobody

11   gets past us without permission.  And we are

12   with anybody that goes into that jury room for

13   any reason.

14        Q    Once the jury has been -- once the

15   jury has the case, the CSOs are outside of the

16   door and literally governing when they go out,

17   when they come in, and making sure that no one

18   other than a juror goes in?

19        A    Yes.

20        Q    What about for the period of the case

21   before it goes to the jury?  Is a CSO outside of

22   the jury room every time they go in and out?

23        A    Not every time they go in and out.

24        Q    There's a CSO in the courtroom every

25   time they come into the courtroom?

1     A    Yes.

2     Q    But your reference to the notice in

3  the jury room is -- what particular notice in

4  the jury room were you referring to when I asked

5  the question about whether there's a policy

6  about communications?

7     A    That nobody is to contact the jury

8  without permission of the Court or in the

9  presence of a CSO.

10     Q    But is it your understanding that

11  applies to the court itself?

12     A    The court and the judges and anybody

13  who wants to even get near the jury.

14     Q    So is it your understanding that if

15  the judge for any reason -- a judge just wanted

16  to have a communication or to send a note into

17  the jury, they would have to be in touch with

18  the CSO?

19     A    Yes.

20     Q    But is it also true that before the

21  jury gets the case and is deliberating, a CSO

22  might not -- well, strike that.

23             Is it the CSO or the courtroom

24  deputy who actually brings the jury in and out

25  of the courtroom prior to the time the jury gets

1    charged with deliberating the case?

2        A    Both of us do.

3        Q    Okay.  So, I'm just now using an

4    example.  So, after a lunch break when the jury

5    is supposed to be coming back into the

6    courtroom, both the courtroom deputy and the

7    CSO would literally be at the door or somehow in

8    charge of having the jury come back in?

9        A    Most of the time the deputy clerk does

10   it.  If they are busy or tied up, the CSOs will

11   retrieve the jury.  Or one of them will be at

12   least holding the door for the jury while they

13   enter.

14       Q    And even if the deputy is not busy and

15   is doing it, the CSO would be in the

16   courtroom --

17       A    Yes.

18       Q    -- while court is in session and that

19   includes when a jury comes in, the CSO is going

20   to be in the courtroom?

21       A    Correct.

22       Q    How does the CSO know when to come

23   back into the courtroom after a break has

24   occurred, or does the CSO remain in the

25   courtroom throughout the breaks when the jury

1    and the judge are out of the courtroom?

2         A    I don't quite understand what you're

3    getting at.

4         Q    When a judge says, let's take a break,

5    the jury goes back to the jury room, people

6    leave; does the CSO remain in the courtroom for

7    that entire time, or does the CSO leave until

8    the appointed time that everyone is to return?

9         A    That's up to the discretion of the

10   CSO.

11        Q    Do you know if there's any particular

12   common practice in this district as to whether

13   the CSOs tend to remain during breaks, as

14   opposed to going out and coming back?

15        A    It just depends on the length of the

16   break.

17        Q    But, again, there's no rule; one

18   CSO may have a different practice than another

19   even if it's a short break?

20        A    Correct.

21        Q    Okay.  In the time that you have been

22   a CSO, since April of 2000 in this courthouse,

23   have you ever observed any contact between a

24   judge and a jury in which the lawyers for the

25   case were not present?

```
1        A    No.

2        Q    What about at the conclusion of

3   deliberations by juries, are you aware of any

4   communications between judges and jurors at that

5   juncture in the case?  I'm speaking generally.

6        A    When they are finished deliberating?

7        Q    Yes.

8        A    And --

9        Q    Are there ever any times when judges

10  walk into the jury room to thank them for their

11  service or anything of that sort?

12       A    I've witnessed that once, but we have

13  been with them.

14       Q    Okay.  Is it fair to say that you have

15  observed -- when you observed thanks, for the

16  most part it's thanks in the courtroom as the

17  jury is being discharged?

18       A    Yes.

19       Q    Okay.

20            MR. DARMER:  I have nothing

21  further for you, Ms. Kimball.  Thank you.

22            MR. COOPER:  No questions.  Thank

23  you.

24            (Proceedings concluded at 2:14 p.m.)

25
```

1          UNITED STATES DISTRICT COURT
                DISTRICT OF ALASKA
2

3   UNITED STATES OF AMERICA,        )
                                     )
4            Plaintiff,              )
                                     )
5       vs.                          )
                                     )
6   ROBERT A. LONG,                  )
                                     )
7            Petitioner.             )
                                     )
    _____ )
8   Case No. 3:02CR-0031-JVS;
    Case No. 3:04CV-00286-JWS
9

10  _____

                DEPOSITION OF DEBBIE LYONS
11  _____

12

13                  May 10, 2007
                    10:07 a.m.
14

15                   Taken at:
          United States District Courthouse
16        222 West 7th Avenue, Courtroom 4
                 Anchorage, Alaska
17

18

19

20

21  Reported by:   Leslie J. Knisley
                   Shorthand Reporter
22

23

24

25

Page 57

1    good to see you again.

2              I'm going to ask you to take a

3    look at Exhibit No. 2.

4         A    Yes, sir.

5         Q    And I think you may recall from your

6    testimony earlier -- and if I'm wrong please

7    correct me -- I think you said that a person

8    trying to understand the log notes would likely

9    need an interpreter or a guide to get through

10   them or words to that effect.  Do you recall

11   that?

12        A    Yes, sir.

13        Q    Okay.  Well, I'm going to ask you to

14   do that for us to a somewhat limited extent

15   today.  Okay?

16        A    Yes, sir.

17        Q    On the first page of Exhibit 2 it's

18   captioned at the top, Administrative Office of

19   the United States, Case Information Record.  Do

20   you see that?

21        A    Yes, sir.

22        Q    And on what date did this Case

23   Information Record get filled out?  Can you

24   tell?

25        A    5/28/2002.

1      Q    And who was the court operator on that

2  day?

3      A    Myself, Debbie Lyons.

4      Q    Do you recognize your handwriting on

5  this?

6      A    I signed my name, yes, sir, in the

7  clerk area.

8      Q    Okay.  And can you tell in which

9  courtroom this trial was taking place?

10     A    This took place in Courtroom 1.

11     Q    And it also notes that the type of

12  proceeding is, Trial by Jury, Day 1, right?

13     A    Correct.

14     Q    Okay.  Going right to the next page,

15  to the second page, at the top under -- this is

16  the log of proceedings that's being

17  electronically recorded generically, which you

18  have previously testified; is that right?

19     A    Yes, sir.

20     Q    Okay.  There are four columns in the

21  main body, Time, Index Number, Speaker and Case

22  Number and some other information.  Under

23  Speaker there are a number of different kind of

24  annotations.

25           Could you explain who CK would

1    be?

2         A     That is the check.

3         Q     Then the third line down in the main

4    body there's CK.  What's under the CK that kind

5    of looks like a J?

6         A     That's J for the judge.

7         Q     And then below that there's an arrow,

8    and below that is COO; who would that be?

9         A     Mr. Cooper, United States Attorney.

10        Q     And below that it says DIE; who would

11   that be?

12        A     I believe that was Mike Dieni, the

13   defense attorney.

14        Q     And then below that is J?

15        A     Again, the judge was speaking at that

16   time.

17        Q     Okay.  Then right below that it says,

18   USA; is that your shorthand for U.S. Attorney?

19        A     Yes, sir.

20        Q     And then several lines down it says,

21   DAT.  Was that your shorthand for defense

22   attorney?

23        A     Yes, sir.

24        Q     Okay.  Now, in the column that says

25   Index Number, the first notation says 8 colon

1    43.  Could you explain that to us?

2        A    That would be the time that I opened

3    court.

4        Q    Further over on that same line there's

5    a place where you write "Open"?

6        A    Correct.

7        Q    Is that when you say, All rise, the

8    Honorable John W. Sedwick, et cetera?

9        A    Yes, sir.

10       Q    In the line above that it says, Test.

11   Could you explain for us what that means?

12       A    Before the court proceedings I would

13   prepare a test to make sure that the tape

14   recorder and the recording equipment was all

15   working correctly.

16       Q    Is that where you turn on your

17   recorder and then you go around to each mike --

18       A    Each microphone, yes.

19       Q    -- and identify the mike and then go

20   back and listen to your recording?

21       A    Yes, sir.

22       Q    Now, is that typically transcribed or

23   requested to be transcribed in the transcripts?

24       A    No, sir.

25       Q    Now, I want you to go down to the

1  fourth page of this Exhibit No. 2, down to a

2  time that says 9 colon 18.  Do you find that?

3      A   Yes, sir.

4      Q    Then in the Speaker column of that

5  line it says, CK; that would be you, correct?

6      A    Correct.

7      Q    And then it says, on record in the

8  next column, correct?

9      A    Correct.

10     Q    And what does that mean?

11     A    That means that I started the tape.

12  We were on record.

13     Q    And in the far right-hand portion of

14  that line, could you read that for us and

15  explain what that means?

16     A    It means that the jury was either in

17  or out.  It appears they were in at that time.

18     Q    And there's a No. 41 that's circled.

19  Do you know what that means?

20     A    No, I'm sorry, I don't.

21     Q    If I suggest to you that the jury

22  panel was brought in the first day of trial and

23  there were 41 prospective jurors, does that make

24  sense?

25     A    Yes, sir, that would be correct.

1        Q    Okay.  And then three pages later,

2   down towards the bottom at 10:32, there appears

3   to be an entry of the clerk, recessed the -- or

4   there was a recess called?

5        A    Correct.

6        Q    Now, that would have been a recess

7   ordered by the Court; is that correct?

8        A    Correct.

9        Q    And then at 10:51 -- that's the next

10  line.

11       A    Correct.

12       Q    Could you explain to us what happens

13  at 10:51?

14       A    I would have reopened court without

15  the jury present.

16       Q    And then the line below that is?

17       A    J, the judge would have been speaking.

18       Q    Okay.  And then after that, we go to

19  the top of the next page, right?

20       A    The defense attorney would have asked

21  the judge a question.  They would have had a

22  conversation between the two of them.

23       Q    And at 10:55 what happened?

24       A    We went off record.

25       Q    And the next line is 10:58; is that

1   right?

2       A    Correct.

3       Q    And what happened at 10:58?

4       A    We were on the record with the jury

5   present.

6       Q    So from 10:32 to 10:58 the jury was

7   not present.  Is that an accurate reading of

8   your log notes?

9       A    That is correct.

10      Q    And, in fact, the Court and Mr. Dieni

11  were back in the courtroom and discussing

12  matters before the jury came back in at that

13  time; is that correct?

14      A    Correct.

15      Q    I believe it's four pages later, down

16  towards the bottom, at 12:11:38, could you tell

17  us what happened?  Could you read your notes for

18  us, please?

19              MR. DARMER:  For the record, I

20  think that's page No. 11.  There's page numbers

21  at the top.

22              MR. COOPER:  You're correct.

23  Thank you very much, Mr. Darmer.  I apologize.

24  I hadn't noted that.

25      Q    Page No. 11 at 12:11:38.  Do you find

Page 64

1    that entry?

2         A    Yes, sir.

3         Q    Explain to us what that means.

4         A    CK is for clerk, which means I would

5    have recessed the court for lunch.  The jury was

6    taken out at that time.

7         Q    And the next line is what?

8         A    1:36, CK, which would have been for

9    the clerk, myself, I would have reopened court

10   at that time.

11        Q    Now, what is the next line?

12        A    1:36:55.  Oh, I'm sorry.  After I

13   would have reopened court, the judge would have

14   said something.  He was talking to the U.S.

15   Attorney.  The judge had a conversation; U.S.

16   Attorney had a conversation; judge had a

17   conversation until 1:37:48.  The judge at that

18   time was speaking with defendant.

19        Q    And then in the line after that it

20   looks like on the far right-hand column it says,

21   1:42 the jury is in; is that correct?

22        A    That's correct.

23        Q    We're at page No. 12.

24        A    I brought the jury in at that time.

25        Q    So after the lunch break, is it fair

1   to say that based on your log notes the Court

2   was present with Mr. Dieni and the U.S. Attorney

3   and we were discussing matters?

4          A     Yes.

5          Q     And this is still all on the first day

6   of trial, May 28th, 2002?

7          A     Yes, sir.

8          Q     And then turning to page No. 13, down

9   towards the bottom at 2:29:36; can you find that

10  line?

11         A     Yes, sir.

12         Q     What happened there?

13         A     The clerk, myself, recessed the court

14  and the jury was taken out.

15         Q     Okay.  Now, in the next line at 2:53,

16  can you tell us what happened?

17         A     I reopened court; the jury was still

18  out at that time; the judge and I had a

19  conversation, or words.

20         Q     And then at 2:57 on page 14, what

21  happened?

22         A     If I may, at 2:54 we were off the

23  record; at 2:57 we were on the record; the jury

24  was in.

25         Q     And then according to the next line,

1    was the judge there?

2         A    Correct.

3         Q    Two lines down, what happened?

4         A    I gave the oath to the jurors.

5         Q    And at 3:03:48, what happened?

6         A    The judge generally would speak to the

7    jury.

8         Q    And at that time he gave them the

9    charge, their opening jury instructions; is that

10   right?

11        A    Correct.

12        Q    Now, turning to page No. 15, at 3:52

13   what happened?

14        A    I swore in the first witness.

15        Q    That would be W1?

16        A    Correct.

17        Q    And then turning to page 17, almost

18   down at the bottom, what time did the jury leave

19   the courtroom?

20        A    The jury was out at 4:32 p.m.

21        Q    Now, after the jury was out there, did

22   court proceedings continue on on that day?

23        A    Yes, sir, they did.

24        Q    In fact, it looks like the judge

25   talked to the probation officer, the defendant,

1    Mr. Dieni, and the probation officer some more,

2    and finally to the U.S. Attorney's Office at

3    about 4:34:36; is that right?

4         A    Yes, sir, that's correct.

5         Q    And what time for that day did you

6    adjourn?

7         A    I adjourned court at 4:34:51.

8         Q    And that's on page No. 18?

9         A    Correct.

10        Q    All still on May 28th of 2002?

11        A    Yes, sir.

12        Q    Okay.  The next page of this document;

13   once again this is a Case Information Record for

14   the same case?

15        A    Yes, sir.

16        Q    What day is this record prepared for?

17        A    May 29, 2002.

18        Q    And can you tell from the May 29th,

19   2002, this handwritten Case Information Record,

20   what time you started roughly?

21        A    9:38 a.m.

22        Q    Turning to the next page, which is

23   page 1 of 8 for 5/29/02, the time in the upper

24   left-hand corner appears to be 8:06:51; is that

25   correct?

1      A      That is correct.

2      Q      And what were you doing at that time?

3      A      I was running a test of the equipment.

4      Q      And what happened at 9:38:59?

5      A      I opened court with the jury present.

6      Q      Okay.  What happened at 9:39:17?

7      A      The judge was in the room.

8      Q      And shortly thereafter, on the next

9   line, 9:30:27, what happened?

10     A      The first witness was called.

11     Q      Okay.  Turning to page 3 of 8 for this

12   same day, at 11:06:33, can you tell us what

13   happened?

14     A      It would appear the judge was talking

15   with the defense attorney.

16     Q      At 11:06 and 33 seconds, what

17   happened?

18     A      I recessed the court; the jury was

19   taken out.

20     Q      What's the next line?  Could you

21   explain the next line for us, please?

22     A      12:23:08, that is the clerk.

23     Q      What did you do?  Just turn on the

24   equipment?

25     A      I turned on the equipment at that

1    time.

2        Q    And what happened on the next line,

3    and what time was that?

4        A    At 12:24:54 p.m. I reopened the court

5    with the jury present.

6        Q    And then what happened on the next

7    line?

8        A    The judge would have come in.

9        Q    Okay.

10           MR. DARMER:  I'm sorry, I missed

11   that last reference.  Where were you?  12:14?

12           MR. COOPER:  12:25:06, I believe,

13   is where the witness was.

14       Q    Correct, ma'am?  That's when the judge

15   came in after that recess?  We're on page 3 of

16   8.

17       A    At 11:25:15.

18       Q    Which is about a minute after the jury

19   was present in the room?

20       A    Correct.

21           MR. DARMER:  I just think that in

22   the earlier testimony someone made reference to

23   12 something; is that correct?

24           THE WITNESS:  You said that by

25   accident.

```
 1                    MR. COOPER:  Did I say that by

 2     accident?

 3         Q    Let's go back and get this correct.

 4                    Ms. Lyons, correct me if I'm

 5     wrong, as I read your log notes on page 3 of 8

 6     for May 29th of 2002 at 11:06 and 33 seconds

 7     a.m. you recessed the court and the jury was

 8     out; is that right?

 9         A    Correct.

10         Q    At 11:24:54 you reopened the matter

11     and brought the jury in and the jury was present

12     in the courtroom?

13         A    Correct.

14         Q    And then at 11:25:06 the judge entered

15     the courtroom?

16         A    Correct.

17         Q    Thank you for catching my dyslexia.

18                    Then, turning your attention to

19     page 5 of 8, at 12:01, can you tell us what

20     happened?  12:01 p.m.

21         A    12:01, the jury was excused.

22         Q    And by whom?

23         A    The judge.

24         Q    And when, then, did the -- let's see.

25     At 12:13 what happened, at 12:13:51?
```

1       A      The jury was asked to come back in.

2       Q      Just to make sure.  At 12:13:51 the

3    Court issued a ruling and the jury was asked to

4    come back in; is that right?

5       A      That is correct.

6       Q      And then at 12:14:57, what happened?

7       A      We went off record.

8       Q      What happened to the jury at that

9    time?

10      A      It would appear the jury was still in

11   the room.

12      Q      When did the court reopen?

13      A      1:35:16.

14      Q      And what happened at that time?

15      A      I reopened court; the jury was not

16   present.

17      Q      So, do we have any idea where the jury

18   was from 12:14:57 to 1:35:16?

19      A      I would assume that was a lunch break,

20   but I don't know that for a fact.

21      Q      So the record is a little bit unclear,

22   but in any event, when you reopened the

23   courtroom at 1:35, the jury was still out,

24   right?

25      A      Correct.

Page 72

1    Q    And at 1:35:32, what happened?

2    A    The judge resumed the bench.

3    Q    Turning your attention, then, to page

4    6 of 8, at 1:48:04; do you find that?

5    A    Yes, sir.

6    Q    What happened at that point?

7    A    The judge is speaking; the jury is

8    present.

9    Q    Now, prior to 1:48:04, between 1:35

10   and 1:48, was Mr. Dieni present in the

11   courtroom?  Can you tell from looking at your

12   log notes?

13   A    He was present at 1:36:14.

14   Q    And, in fact, at 1:46:59 he was still

15   making comments, as noted on your log notes,

16   right?

17   A    Correct.

18   Q    Okay.  Then, turning to page 7 or 8

19   and going down to 2:04 p.m., 2:04:02, do you

20   find that?

21   A    Yes, sir.

22   Q    What happened then?

23   A    The Government rested their case at

24   that time.

25   Q    And what happened on the next line, at

1    2:04:08?

2         A    The judge excused the jury.

3         Q    And was the jury out at that time?

4         A    The jury was taken out of the room at

5    that time.

6         Q    Turning to page 8 of 8, towards the

7    top of the page at 2:19:48; do you find that?

8         A    Yes, sir.

9         Q    What happened at that point?

10        A    The jury was back in the courtroom.

11        Q    They were brought back into the

12   courtroom at that time?

13        A    Correct.

14        Q    And in the next few lines, was the

15   judge there and was Mr. Dieni there as well?

16        A    Correct.

17        Q    At 2:21, what happened?

18        A    The fifth witness was sworn in.

19        Q    And who was that?

20        A    Tina Crump.

21        Q    What time was she excused?  Can you

22   tell?

23        A    I cannot tell.  It appears she was

24   still speaking or was still on the witness stand

25   at 2:23:44.  It's possible she could have been

1    excused at that time, but I did not make a

2    notation for that.

3        Q    What happened at 2:30:49?

4        A    The jury was out of the room.

5        Q    And was anybody still present at the

6    time the jury left?  Can you tell from reading

7    the rest of your log notes on that page?

8        A    The judge, the defense attorney, the

9    defendant, myself, U.S. Attorney was still

10   there.

11       Q    And what time was court adjourned?

12       A    Court was adjourned at 2:34:48.

13       Q    Okay.  Now, turning your attention to

14   the next two pages, ma'am, these appear to be

15   handwritten pages.  Do you recognize those two

16   pages?

17       A    That is my writing, yes, sir.

18       Q    And it appears to me, correct me if

19   I'm wrong, that once again they're a

20   continuation of the proceeding on May 29th, 2002

21   with you, the clerk, opening the court again at

22   what looks to be 3:40; is that correct?

23       A    Yes, sir, that is correct.

24       Q    Where was the jury at this time?

25       A    The jury was out.

1       Q    Okay.  And who was present in the

2  courtroom?  Can you tell from looking at these

3  notes?

4       A    I assume all parties were present.  I

5  do not know that for a fact.

6       Q    Well, it says here -- the third line

7  says J.  That's for the --

8       A    The judge.

9       Q    He says, on the record, correct?

10      A    Correct.

11      Q    And then Mr. Dieni, the defense

12  attorney, has some things to say.

13      A    Correct.

14      Q    And then down at 3:55 the U.S.

15  Attorney finally has some things to say?

16      A    Yes, sir.

17      Q    And on the second page of these

18  handwritten pages, the U.S. Attorney and the

19  defense attorney and the judge and the clerk all

20  have things to say, right?

21      A    Yes, sir, all were present.

22      Q    And then that court day ended at

23  3:56:37, right?

24      A    Correct.

25      Q    Thank you.  Thank you for bearing with

1   me.  We have two more short days to get to.

2               Turning your attention to the

3   next page, this appears to be May 30th of 2002,

4   time 10:45; is that your name there again and

5   your signature, Debbie Lyons?

6       A    Yes, sir, that is.

7       Q    The next page, which is once again

8   typewritten notes, on page 1 of 2, what time did

9   you open court that day?

10      A    10:45:09 a.m.

11      Q    And what happened at that time?

12      A    I called the court to order; the jury

13  was in.

14      Q    And what happened at 10:45:23?  Did

15  the judge come in?

16      A    The judge took the bench, yes, sir.

17      Q    And then it looks like closing

18  argument by plaintiff started at 10:46?

19      A    Correct.

20      Q    And closing argument by the defendant

21  at 11:08?

22      A    Correct.

23      Q    Rebuttal, which is on page 2 of 2, by

24  the Government started at 11:45?

25      A    Correct.

1      Q    And the jury was out to begin

2    deliberations at 12:06:45; is that right?

3      A    Correct.

4      Q    Is your reading of those notes of

5    these two days the jury would have been in the

6    courtroom for the entire time from 10:45:09

7    until 12:06:45?

8      A    Yes, sir.

9      Q    And then court was adjourned at, I

10   believe I might have said -- what time did court

11   adjourn that day?

12     A    12:09:39.

13     Q    Okay.  Then turning your attention,

14   ma'am, to the next page, it appears to be

15   another Case Information Record, May 31st of

16   2002 beginning at 9:51 a.m.

17     A    Yes, sir.

18     Q    Is that your handwriting; Debbie

19   Lyons?

20     A    Yes, sir, it is.

21     Q    Okay.  So, turning your attention

22   finally to this last page, what time did you

23   open court?

24     A    I opened court at 9:51:44 a.m.

25     Q    Where was the jury at that time?

```
 1      A    The jury was not present at that time.

 2      Q    At 9:52:19, what happened?

 3      A    The judge and the U.S. Attorney and

 4  the defendant were having a conversation.

 5      Q    It appears it was about a question?

 6      A    It would appear so, yes, sir.

 7      Q    What time did you go off the record?

 8      A    Off the record was at 9:55:52.

 9      Q    What time did we go back on record?

10      A    Back on record at 10:02:51.

11      Q    Do we know where the jury was at this

12  time?

13      A    The jury was not present at this time.

14      Q    Can you tell from looking at this

15  record what time the jury did come in?

16      A    The jury was in at 11:25:32 a.m.

17      Q    And at 11:28 what happened?

18      A    The verdicts were read.

19      Q    Was the jury polled?

20      A    The jury was polled at 11:29:46 a.m.

21      Q    And what time was the jury excused?

22      A    The jury was excused at 11:31:02 a.m.

23      Q    Okay.  I know we've covered a lot of

24  ground and a lot of detail.  Ms. Lyons, can you

25  identify any time based upon your log notes for
```

1    those days where the jury and the judge were

2    alone in the courtroom without counsel present?

3         A    No, sir, I cannot.

4                   MR. COOPER:  I don't have any

5    further questions.  Thank you very much.

6                   THE WITNESS:  Thank you.

7                   MR. DARMER:  Ms. Lyons, a couple

8    of follow-up questions to your testimony in

9    response to the Government.

10                  FURTHER EXAMINATION

11        Q    (BY MR. DARMER)  First of all, you've

12   been asked a lot of questions about the time in

13   the index number column in the logs.  Where are

14   you getting the time from that are reflected in

15   the logs?

16        A    The large clock that sits in front of

17   us.  An atomic clock.

18        Q    Like the one behind you?

19        A    Yes, sir.  It's that clock right there

20   (indicating).

21        Q    Okay.  And before court -- this one is

22   not correct.  I take it one of the things you do

23   before court is you make sure that that clock is

24   correct?

25        A    That would be correct.

1          UNITED STATES DISTRICT COURT
                 DISTRICT OF ALASKA
2

3    UNITED STATES OF AMERICA,              )
                                            )
4              Plaintiff,                    )
                                            )
5         vs.                               )
                                            )
6    ROBERT A. LONG,                        )
                                            )
7              Petitioner.                   )
                                            )
8    Case No. 3:02CR-0031-JVS;
     Case No. 3:04CV-00286-JWS
9

10   _____

                 DEPOSITION OF MARC McGOWAN
11   _____

12

13                   May 9, 2007
                      2:45 p.m.
14

15                   Taken at:
           United States District Courthouse
16         222 West 7th Avenue, Courtroom 4
                  Anchorage, Alaska
17

18

19

20

21   Reported by:  Leslie J. Knisley
                    Shorthand Reporter
22

23

24

25

1        Q    And a note, to your understanding,

2    would be presented in open court?

3        A    Right.  And this note could be

4    anything from, I want more pens, I want water.

5    But, you know, they write it on a note, we give

6    to the foreperson and they get hold of the

7    in-court, and that's it.

8        Q    And is it your understanding that

9    Judge Sedwick had a similar policy?

10        A    As far as I know.  Every judge I've

11    worked with in this district has the same

12    policy.  In fact, I can speak for Judge Sedwick.

13    I've been on his trials several times.  He is

14    adamant about the notes.

15        Q    What about prior to the time the jury

16    is deliberating in terms of communications with

17    the jury when they're coming and going into the

18    courtroom?  Have you ever heard anything --

19        A    No.  Usually the judge is on the bench

20    and then they call for the jury to be brought

21    in.

22        Q    And in that case the CSO would always

23    be in the room when the judge is on the bench?

24        A    Yes, we're always in there.

25        Q    To put it another way, in your

```
 1    experience juries are not generally brought into

 2    or out of the courtroom unless the judge is on

 3    the bench?

 4         A    Uh-huh.

 5         Q    And based on your experience here, a

 6    CSO is always in the courtroom when the judge is

 7    on the bench?

 8         A    Either a CSO or a deputy U.S. marshal,

 9    one of the two, yes.

10         Q    Thus, there would be someone to see

11    any interchange between the judge and the jury?

12         A    In my experience, yes.

13         Q    And you've never heard anecdotally or

14    otherwise of some deviation from that?

15         A    Never have I heard that.

16         Q    Okay.

17                   MR. DARMER:  I have nothing

18    further for this witness.

19                   MR. COOPER:  I have no questions.

20                   (Proceedings concluded at 2:50 p.m.)

21

22

23

24

25
```

Page 1

1          UNITED STATES DISTRICT COURT
                DISTRICT OF ALASKA
2

3   UNITED STATES OF AMERICA,            )
                                          )
4            Plaintiff,                   )
                                          )
5       vs.                               )
                                          )
6   ROBERT A. LONG,                       )
                                          )
7            Petitioner.                  )
                                          )
8   Case No. 3:02CR-0031-JVS;
    Case No. 3:04CV-00286-JWS
9

10  _____

                DEPOSITION OF ROBERT McMORROW
11  _____

12

13                   May 9, 2007
                      2:51 p.m.
14

15                   Taken at:
            United States District Courthouse
16        222 West 7th Avenue, Courtroom 4
                  Anchorage, Alaska
17

18

19

20

21  Reported by:   Leslie J. Knisley
                    Shorthand Reporter
22

23

24

25

1    whether the CSO office or the system maintains

2    the schedule for past days?

3        A    I would have no knowledge of that.

4        Q    Okay.  Are you aware of any instance

5    during the time you've been a CSO in this

6    district in which a judge has had communication

7    with a jury or juror outside of the presence of

8    counsel in the case?

9        A    I'm not aware of any.

10       Q    Ever heard anything like that

11   anecdotally or rumors about that?

12       A    No, I have not.

13       Q    Have you participated as a CSO in

14   trials that were presided over by Judge Sedwick?

15       A    Yes, I have.

16       Q    And do you know what his practice is

17   in terms of dealing with communications with the

18   jury?

19       A    All -- not just Judge Sedwick, but all

20   judges that I have sat in on have -- any

21   communications have gone back and forth by way

22   of note.  And then, if needed, the juries are

23   called into the courtroom in the presence of the

24   attorneys and whoever is deemed necessary to be

25   there for the communication -- the type of

1    communication it is.

2         Q    With the note you're referring to

3    being delivered by the CSO into the actual jury

4    room?

5         A    Normally the notes that we would get

6    would be coming from the jury.  For some reason

7    they need something or want to see something

8    again, something of that nature, and we deliver

9    them to the clerk and the clerk takes the

10   appropriate action.

11        Q    Okay.  And a slightly different

12   question:  In the years that you've been a CSO

13   in this courthouse, have you ever encountered a

14   situation where when you've been the CSO in the

15   courtroom, that a jury and judge is in the

16   courtroom, but counsel for the parties are not

17   also present?

18        A    Not to my recollection.

19        Q    Would that be an unusual instance for

20   you?

21        A    Yes, it would be.

22        Q    Something you would probably remember?

23        A    I would think so.

24        Q    Are there any written policies and

25   procedures that you're aware of in terms of how

1              UNITED STATES DISTRICT COURT
                    DISTRICT OF ALASKA
2

3    UNITED STATES OF AMERICA,          )
                                        )
4              Plaintiff,               )
                                        )
5         vs.                           )
                                        )
6    ROBERT A. LONG,                    )
                                        )
7              Petitioner.              )
     _____)
8    Case No. 3:02CR-0031-JVS;
     Case No. 3:04CV-00286-JWS
9

10   _____

                 DEPOSITION OF STEVE PAYNE
11   _____

12

13                    May 10, 2007
                       1:45 p.m.
14

15                     Taken at:
             United States District Courthouse
16          222 West 7th Avenue, Courtroom 4
                   Anchorage, Alaska
17

18

19

20

21   Reported by:  Leslie J. Knisley
                   Shorthand Reporter
22

23

24                        .

25

Case 3:02-cr-00031-JVS    Document 322    Filed 10/15/2007    Page 48 of 52

(10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    11/04/2005

At approximately 2:15pm, TINA E. CRUMP, date of birth 08/17/1965, Mile 1.5 Nash Road, Seward, Alaska, telephone number (907) 224-5381, was discreetly contacted by Special Agent (SA) STEVE PAYNE and Deputy U.S. Marshal (DUSM) JAMES "SONNY" CAUDILL at her place of employment, the Marina Restaurant, which was located near the intersection of 4th Avenue and Washington Streets in Seward, Alaska.  CRUMP was advised of the identities of the contacting agent and deputy and the purpose of the interview.  Thereafter, she agreed to discuss the matter with SA PAYNE and DUSM CAUDILL.  CRUMP left briefly to advise her boss of the situation and request a short break.  A middle-aged white female, who CRUMP later identified as her boss and the owner of the restaurant, confronted SA PAYNE and DUSM CAUDILL at a table in the back of the restaurant, where she advised SA PAYNE and DUSM CAUDILL that CRUMP would not be allowed to speak with them during her shift and that it was "wrong" for SA PAYNE and DUSM CAUDILL to have contacted CRUMP at work.  This unidentified female owner was verbally abusive throughout her short contact with SA PAYNE and DUSM CAUDILL for no apparent reason. Consequently, SA PAYNE advised CRUMP that he and DUSM CAUDILL would wait for her in front of the restaurant until her shift ended at 3:00pm.  CRUMP agreed to meet SA PAYNE and DUSM CAUDILL at that time.

At approximately 3:40pm, CRUMP exited the restaurant and contacted SA PAYNE and DUSM CAUDILL in SA PAYNE's Bureau vehicle, which was parked in front of an adjacent store for the duration of the interview.  Thereafter, CRUMP provided the following information:

The incident CRUMP described briefly in her affidavit dated 05/18/2005, regarding potential ex parte contact between the judge and jury during the criminal trial of ROBERT LONG by the United States of America several years ago, occurred before she testified in that case.  CRUMP believed that it occurred at the beginning of the trial, probably on the first day, but she did not recall the time of day, nor could she reasonably approximate it.  CRUMP observed the incident in question when she returned early from a break.  As CRUMP entered the courtroom, she noticed that the jury was seated, and that the judge appeared to have just entered the courtroom and was

Investigation on    11/04/2005    at    Anchorage, Alaska

File #  89E-AN-13216                               Date dictated    N/A

by    SA STEVEN M. PAYNE and DUSM JAMES CAUDILL



This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

FD 302a (Rev 10-6-95)

89E-AN-13216

Continuation of FD-302 of ____TINA E. CRUMP_____ On _11/04/2005_ Page __2__

walking toward his seat on the bench   The courtroom guards were
also present, but neither LONG nor the attorneys were in the
courtroom at this time   CRUMP was walking to her seat at this
time and estimated that she was 30-40 feet from the judge and
jury

        At this point, an unknown female member of the jury,
who was believed to have blond hair, raised her hand and asked
the judge a question   CRUMP did not recall this woman's exact
words, but indicated that the question was essentially, "What do
we do with this packet?"   CRUMP observed the aforementioned
female and other members of the jury holding several pieces of
paper, but CRUMP was unaware of the contents of these documents
The judge responded essentially, "Just read through them and
follow the instructions "  Several other jurors had their hands
raised, as if to ask the judge questions, but they lowered their
hands following the judge's aforementioned remark   Other
individuals, including LONG and the attorneys, began returning
to the courtroom a few minutes after the aforementioned exchange
between the judge and jury, but CRUMP did not recall if anything
else was said by either the judge or jury, before LONG and the
attorney's returned to the courtroom

        CRUMP also recalled one of the juror's asking the judge
something about LONG's mental state, but she did not remember
the exact verbiage, and thought that the question was
irrelevant   CRUMP did not recall which juror asked this
question or when it happened during the trial, but she was
confident that it occurred while LONG and the attorneys were out
of the courtroom during a break   CRUMP did not recall if this
question was asked during the same break as the aforementioned
question about the jury packets   CRUMP believed that the judge
responded to this question in the same manner as the previous
one and said essentially, "Follow the instructions in your
packet "

        CRUMP did not observe the judge say anything about LONG
or the trial proceedings during the aforementioned incidents,
and the jury did not ask any such questions, other than the
previously mentioned question about LONG's mental state, which
the judge did not answer, other than to refer the jury to its
packet   CRUMP repeatedly stated throughout this interview that
she did not believe that any of the judge's comments were
inappropriate or intended to influence the jury in any way

FD 302a (Rev 10-6-95)

89E-AN-13216

Continuation of FD 302 of ____TINA E. CRUMP_____ On _11/04/2005_ Page __3__

       CRUMP advised LONG of the aforementioned information,
including all of the details, during a conversation several
months ago  The subject came up when they were discussing a
recent newspaper article or report, regarding ex parte contact
that allegedly occurred in a State of Alaska case in Kenai
When CRUMP advised LONG of her observations in his case, he
immediately became agitated and concerned, and told CRUMP
essentially that any contact between the judge and jury, outside
the presence of the defendant and the attorneys, was improper
LONG typed an affidavit regarding this matter on his computer,
while he was in CRUMP's presence at the aforementioned Marina
Restaurant, on the same day of their conversation  LONG
presented this affidavit to CRUMP, who read and signed it
CRUMP noticed that many of the details that she related to LONG
were not in the affidavit he prepared for her, but she assumed
that this was normal and that the details would be presented
later in court

       SA PAYNE provided CRUMP with a copy of the
aforementioned affidavit, and she confirmed that it bore her
signature and appeared to be an accurate copy of the document
CRUMP believed that the affidavit was true, albeit somewhat
brief  However, upon further review, she realized that some of
the contents of her affidavit could be construed to imply that
the judge and/or jury had engaged in questionable conduct during
the aforementioned trial  CRUMP repeatedly reiterated that this
was not her intent, and that she did not believe that any of the
judge's comments were inappropriate or intended to influence the
jury in any way  CRUMP did not realize that LONG was going to
use her affidavit to allege such conduct, when he prepared it
and she signed it earlier this year  If CRUMP had known what
LONG intended to do with her affidavit or been more familiar
with the judicial process, at a minimum she would have insisted
that all of the aforementioned details were included in her
affidavit, and she would probably have prepared it herself

       This interview was terminated at approximately 5 00pm

```
 1                 UNITED STATES DISTRICT COURT
                        DISTRICT OF ALASKA
 2

 3    UNITED STATES OF AMERICA,           )
                                          )
 4              Plaintiff,                )
                                          )
 5         vs.                            )
                                          )
 6    ROBERT A. LONG,                     )
                                          )
 7              Petitioner.               )
                                          )
 8    Case No. 3:02CR-0031-JVS;
      Case No. 3:04CV-00286-JWS
 9

10    _____

                DEPOSITION OF RON REINHARDT
11    _____

12

13                      May 9, 2007
                        3:04 p.m.
14

15                       Taken at:
              United States District Courthouse
16            222 West 7th Avenue, Courtroom 4
                     Anchorage, Alaska
17

18

19

20

21    Reported by:   Leslie J. Knisley
                      Shorthand Reporter
22

23

24

25
```

```
 1   as much lately.
 2        Q     But I take it in all the years you've
 3   been a CSO, to the extent you have been serving
 4   in the courtroom as opposed to the control room,
 5   you have never encountered a situation where a
 6   judge and a jury was in the courtroom --
 7        A     No.
 8        Q     -- engage each other when counsel for
 9   the two sides were not present?
10        A     No.
11        Q     Okay.  Thank you.
12                MR. DARMER:  I have no further
13   questions.
14                MR. COOPER:  I have no questions.
15   Thank you, Ron.
16                (Proceedings concluded at 3:09 p.m.)
17                (Proceedings reconvened at 3:25 p.m.)
18                FURTHER EXAMINATION
19        Q     (BY MR. DARMER)  Mr. Reinhardt, I had
20   a follow-up question on your testimony relating
21   to your control room duty, which you referred to
22   as being your primary posting in the 2000 to
23   2003 time period.
24        A     To the best of my recollection, yes.
25        Q     Is one of the functions of the control
```