Roman E. Darmer II (Bar No. 212578)
HOWREY LLP
2020 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 721-6900
Facsimile: (949) 721-6910
Email: darmerr@howrey.com

Attorneys for Petitioner
ROBERT A. LONG

# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ROBERT A. LONG,<br><br>　　　　Petitioner. | Case Nos.<br>3:02 CR-00031-JVS;<br>3:04 CV-00286-JWS<br><br>**PETITIONER ROBERT A. LONG'S REPLY TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR MISCELLANEOUS RELIEF**<br><br>Judge: Hon. James V. Selna<br><br>Date:　None<br>Time:　None<br>Ctrm:　None |

**HOWREY LLP**

PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No. 3:02 CR-00031-JVS; 3:04 CV-00286-JWS

DM_US:20856379_3

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ................................................................................................ 1

II. APPLICABLE LEGAL STANDARD ................................................................. 1

    A. Mr. Long Bears No Burden Of Proof and the Court Must Resolve Any Doubts in Favor of Recusal. ........................................ 1

    B. Section 455(a) And The Case Law Thereunder Require the Court to Consider all Facts Bearing on the Appearance Of Impropriety. .......................................................................... 2

    C. The Extrajudicial Source "Doctrine" Does Not Bar Relief Under Section 455(a). ................................................................. 4

III. ARGUMENT ....................................................................................................... 6

    A. The Government's Argument That There is No Probative Evidence That the Alleged Ex Parte Events Occurred is Meritless. ........................................................................................... 6

    B. Judge Sedwick's Undisputed Personal Relationship With The Victims Must Be Considered in Evaluating Whether He Improperly Failed To Recuse Himself Under Section 455(a). ............................................................................................... 11

    C. If the Alleged Ex Parte Contacts Occurred There Was Probative Evidence of an Appearance Of Impropriety. ............................. 12

IV. CONCLUSION .................................................................................................. 13

-i-

PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No.  3:02 CR-00031-JVS; 3:04 CV-00286-JWS

HOWREY LLP

DM_US:20856379_3

# TABLE OF AUTHORITIES

Page No.

**CASES**

*Bernard v. Coyne*,
  31 F.3d 842 (9th Cir. 1994) .................................................................................. 12

*Church of Scientology v. Cooper*,
  495 F. Supp. 455 (C.D. Cal. 1980) ......................................................................... 2

*Clemens v. United States Dist. Ct.*,
  428 F.3d 1175 (9th Cir. 2005) ...................................................................... 3, 5, 11

*Herrington v. County of Sonoma*,
  834 F.2d 1488 (9th Cir. 1987) ................................................................................ 4

*In re Nettles*,
  394 F.3d 1001 (7th Cir. 2005) ................................................................................ 2

*In re United States*,
  441 F.3d 44 (1st Cir. 2006) ..................................................................................... 2

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988) ..................................................................................... 1, 11, 12

*Liteky v. United States*,
  510 U.S. 540 (1994) ............................................................................................ 1, 4, 5

*Marshall v. Jerrico, Inc.*
  446 U.S. 238 (1980) .................................................................................................. 2

*United States v. Gordon*,
  974 F.2d 1110 (9th Cir. 1992) ................................................................................. 3

*United States v. Greenspan*,
  26 F.3d 1001 (10th Cir. 1994) .............................................................................. 1, 2

*United States v. Patti*,
  337 F.3d 1317 (11th Cir. 2003) ................................................................................ 2

*United States v. Sundrud*,
  397 F. Supp. 2d 1230 (C.D. Cal. 2005) .................................................................. 12

**STATUTES**

28 U.S.C. section 455(a) ............................................................................ 3, 4, 11, 12

Fed. R. Civ. P. 60(b)(6) ............................................................................................. 13

HOWREY LLP

-ii-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No.  3:02 CR-00031-JVS; 3:04 CV-00286-JVS

DM_US:20856379_3

## I. INTRODUCTION

Petitioner Robert A. Long though appointed counsel respectfully submits this reply memorandum of points and authorities in connection with the pending motion for miscellaneous relief and incorporates by reference herein all of the arguments in his Opening Memorandum of Points and Authorities in Support of Motion for Miscellaneous Relief dated July 23, 2007. ("Opening Br.").

## II. APPLICABLE LEGAL STANDARD

### A. Mr. Long Bears No Burden Of Proof and the Court Must Resolve Any Doubts in Favor of Recusal.

The government's formulation of the applicable legal standard misstates Mr. Long's prior submissions as well as applicable law.[1] Opp. Br. 4-7. Mr. Long has cited the relevant Supreme Court and lower court cases holding that where, as here, there is at least some probative evidence raising questions as to impartiality, this Court must conclude that recusal was warranted. Opening Br. 13:15-18. "Quite simply and quite universally, recusal was required whenever 'impartiality might reasonably be questioned'" on an objective basis. *Liteky v. United States*, 510 U.S. 540, 548 (1994), *quoting Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). None of the cases in the government's brief hold to the contrary.

It is the government that has repeatedly sought to confuse the issue by erroneously suggesting that Mr. Long somehow bears a burden of proof as to the required factual showing. "It is *not* a question of either the government or the defendant bearing a burden of proof." *United States v. Greenspan*, 26 F.3d 1001, 1007 (10th Cir. 1994) (emphasis supplied). This is because the federal courts have an institutional interest to insure that justice meted out by Article III judges preserves both the

---

[1] References in this form are to the Government's Opposition to the Motion for Miscellaneous Relief dated October 15, 2007 ("Opp. Br.").

-1-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No. 3:02 CR-00031-JVS; 3:04 CV-00286-JWS

HOWREY LLP

DM_US:20856379_3

appearance and reality of fairness and neutrality. *See Marshall v. Jerrico, Inc.* 446 U.S. 238, 242 (1980). Nor is there any basis in the case law supporting the government's assertion that an appearance of impropriety can only "come from, spring from or result from some act or speech that has been *proved*." Opp. Br. at 32 (emphasis on original). Notably, the government cites no cases in support of this purported statement of law.

Additionally, the government nowhere in its papers acknowledges that applicable law requires the Court to resolve any doubts in favor of recusal. *United States v. Greenspan*, 26 F.3d at 1007; *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003); *In re United States*, 441 F.3d 44, 56 (1st Cir. 2006), *cert. denied*, 127 S. Ct. 288 (U.S. 2006); *Church of Scientology v. Cooper*, 495 F. Supp. 455, 462 (C.D. Cal. 1980) (when in doubt, the Court should resolve the issue in favor of the party seeking recusal given the unique nature of the underlying case, which involved threats to individual judges).

**B.  Section 455(a) and the Case Law Thereunder Require the Court to Consider all Facts Bearing on the Appearance Of Impropriety.**

The government's suggestion that this Court avoid the obvious implications of the admitted personal relationships between Judge Sedwick and the victims in the underlying case misstates applicable law. Opp. Br. 2-3, 33-34. While the cases clearly require recusal of a federal judge who was himself the intended victim of an alleged crime, there are also cases in which recusal extends beyond the judge who was the intended victim to some or all of the other judges within the same district. *See, e.g.*, *In re Nettles*, 394 F.3d 1001, 1002-1003 (7th Cir. 2005) (all of the judges of the federal district in question could have been fairly viewed as intended victims of the charged offense and thus recusal of the entire bench was required under section 455(a)). Of critical importance here, while the Ninth Circuit has previously rejected an attempt to disqualify a judge based on his relationship with a victim of a threat in another branch of the federal government, *see, e.g., United States v. Gordon*, 974 F.2d 1110, 1114 (9th

-2-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No.  3:02 CR-00031-JVS; 3:04 CV-00286-JWS

HOWREY LLP

DM_US:20856379_3

Cir. 1992) (holding that a district judge was not required to recuse himself under 28 U.S.C. section 455(a) in a case involving a presidential assassination attempt simply because the judge was appointed by the President and the President might be required to testify), it has more recently recognized that there may be grounds for recusal based on a personal relationship between a district judge who is a victim of a threat in another district judge sitting in the same district.

Specifically, the Ninth Circuit has recognized that recusal of all of the judges in a federal district may be required where there were personal threats made against three of the judges on that court. *Clemens v. United States Dist. Ct.*, 428 F.3d 1175, 1179-1180 (9th Cir. 2005) (concluding that recusal on those facts not required because of size of Central District of California compared to number of judges actually threatened and geographic division of judges within district).  In *Clemens*, the Ninth Circuit held that the existence of a personal relationship between the judges who were victims and other judges on the same bench might require recusal under section 455(a), but rejected reaching such a conclusion in that case because the defendant failed to offer proof of *any* personal relationships among the judges of the district at issue. *Id.* at 1180. ("*Clemens* speculates – but does not tender any evidence – about personal relationships among the judges of the Central District that might give rise for a reasonable observer to question the impartiality of the judges.")  Where, as here, the underlying criminal case involves threats to individual magistrate or district judges *and* Mr. Long has proffered undisputed evidence that there was a close personal relationship between the intended victims and Judge Sedwick, 6/1/07 Tr. 103:7-22, this court must take those facts into account in ruling on the pending motion if the clear language of section 455(a) and case law interpreting that statute are to be given any meaning whatsoever.

Moreover, the Supreme Court and lower court cases interpreting section 455(a) make crystal clear that the Court cannot arbitrarily limit the facts to be considered in evaluating whether a judge's impartiality might reasonably be questioned, even if some,

HOWREY LLP

-3-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No.  3:02 CR-00031-JVS; 3:04 CV-00286-JWS

DM_US:20856379_3

but not all, of those facts have been considered before. Opp. Br. 33-34. The Ninth Circuit has held that the relevant test under section 455(a) is whether an average, reasonable person "knowing *all* the circumstances" would harbor doubts about the judge's impartiality. *Herrington v. County of Sonoma*, 834 F.2d 1488, 1502 (9th Cir. 1987) (emphasis added). *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 714 (9th Cir. 1990). As explained above, it is indisputable that recusal in cases involving a threat to a federal judge presents a very different analysis than a garden variety recusal case. That is because "recusal of an individual judge . . . may be required when the judge himself has been the subject of a personal threat, unless the threat was motivated by a desire to recuse the judge." *Clemens*, 428 F.2d at 1179. Obviously the alleged threats in his case were not made in an attempt to recuse; on the contrary, the alleged threats were made in the course of civil litigation activities pursued by Mr. Long to vindicate his rights in the civil context. No "reasonable person," which has been defined in the Ninth Circuit as a "well-informed, thoughtful observer," could possibly ignore the fact of Judge Sedwick's admitted relationships with the judicial victims or the small size of the Alaska District Court bench in evaluating whether recusal was required in this case, regardless of Ms. Crump's allegations. *Id.* at 1178. Accordingly, the Court must consider these facts in deciding the pending motion.

  **C. The Extrajudicial Source "Doctrine" Does Not Bar Relief Under Section 455(a).**

  The government's argument that the requested relief should be denied based on application of the so-called extrajudicial source "doctrine" because all of the alleged facts occurred "within the time frame of the trial" is meritless. Opp. Br. at 6. The Supreme Court has held that an allegation concerning some extrajudicial matter is neither a necessary nor a sufficient condition for disqualification under any of the federal recusal statutes. *Liteky*, 510 U.S. at 554-555 (holding that while the extrajudicial source "factor" applies to section 455(a), "there is not much doctrine to the doctrine.").

While the extrajudicial "factor" would typically preclude recusal motions based on prior "judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses," the two facts on which recusal is based here – alleged improper ex parte contacts with the jury and personal relationships between the victim judges and Judge Sedwick – are by definition "extrajudicial" inasmuch as an ex parte contact can never be described as "routine" or "ordinary." *Id.* at 556-57.  Nor can a personal relationship be described as falling within any description of the routine judicial function as defined in *Liteky* and its progeny.[2]

Of course, the best evidence that this is the correct interpretation of both section 455(a) and *Liteky* is the undisputed fact that after Judge Sedwick's belated recusal in this matter, *all* of the remaining judges of the District of Alaska declined to accept assignment of this matter and promptly recused themselves.  *See* Opening Br. at 18:1-12 (citing recusal orders in Docket Nos. 199 and 203).  There were no allegations of misconduct relating to any of those judges raised in by Mr. Long's post-trial motions and thus, under the government's theory, those judges would have not only been free to sit in this matter but had an obligation to do so.  *See e.g., Clemens*, 428 F.3d at 1179 ("a judge has 'as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require.'")  The only possible basis for the recusal of *all* other judges of this district is their personal relationships with the judicial victims in the underlying case as well as their personal relationships with Judge Sedwick.  The

---

[2] Moreover, even if an improper *ex parte* contact or a personal relationship could somehow be characterized as a judicial act, the absence of an extrajudicial factor is still not necessarily a basis for denying a recusal request where the alleged conduct reflects a display of "deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky*, 510 U.S. at 540.  Because the underlying allegations and the actions of the active judges of the District are all consistent with treatment of an alleged *ex parte* contact or a personal relationship as an extrajudicial source there is no need to reach that issue.

-5-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No.  3:02 CR-00031-JVS; 3:04 CV-00286-JWS

HOWREY LLP

DM_US:20856379_3

mere fact of those recusals, without more, is the best evidence that to the extent it applies at all, the extrajudicial "factor" is in any event satisfied in this case.

**III.    ARGUMENT**

**A.    The Government's Argument That There is No Probative Evidence That the Alleged Ex Parte Events Occurred is Meritless.**

Faced with the foregoing legal authorities, the government's sole argument is to attempt to discredit Ms. Crump's testimony by pointing to minor differences in her narrative as to the events she observed in Judge Sedwick's courtroom more than five years ago and suggesting that those facts somehow "prove" that the alleged contacts did not occur. That attempt is unavailing for several reasons.

As a preliminary matter, the government fails to mention anywhere in its opposition papers that the government has already conceded on the record its conclusion that Ms. Crump was truthful and credible in her affidavit and post-affidavit statements. It is undisputed that shortly after Ms. Crump first executed her affidavit, the government commenced an investigation into her allegations. Specifically, AUSA Cooper dispatched two highly experienced law enforcement officers familiar with Mr. Long's criminal case – Deputy U.S. Marshal Caudill and FBI Special Agent Steve Payne – to surprise Ms. Crump at her workplace and interview her. Payne Dep. Tr. 9:23-16:16. That interview of Ms. Crump, which occurred much closer to the date of the events in question than the recent hearing, lasted approximately an hour and one-half and took place in the intimidating location of the back seat of a black government-issued vehicle.[3] Payne Dep. Tr. 29:16-30:2.

---

[3] The government's attempt to criticize Ms. Crump for discrepancies in her testimony after the passage of more than five years since Mr. Long's trial is particularly outrageous given that Agent Payne conceded that he possessed audio recording equipment in the very FBI vehicle in which Ms. Crump was interviewed, but has asserted that he chose not to use it despite the high profile nature of the criminal case against Mr. Long and Ms. Crump's allegations. Payne Dep. Tr. 27:16-29:15.

Both Deputy Marshal Caudill and Agent Payne testified that Ms. Crump answered numerous questions about the allegations in her affidavit during that interview. After extensive and detailed questioning about every aspect of the affidavit by two highly experienced law enforcement officers, both of them concluded that Ms. Crump was truthful and that her expanded explanation and additional detail relating to the facts described in the affidavit were credible. Payne Dep. Tr. 30:25-31:9; Caudill Dep. Tr. 20:12-21:2. The government's argument that Ms. Crump is not credible squarely contradicts the conclusions of experienced law enforcement personnel based on a detailed in-person interview much closer in time to the events in question that she is, in fact, credible and truthful.

Second, the government's attempt to discredit Ms. Crump by referring back to particular words or phrases in her affidavit or because the affidavit was "non-specific" is unpersuasive. Opp. Br. 28. This is so given her undisputed testimony that the affidavit was drafted by Mr. Long based on limited information provided by Ms. Crump; she did not review the affidavit carefully before she signed it; and her acknowledgement that she would not necessarily have used the same words or phrases had she drafted it herself knowing how it was later going to be used. Crump Dep. Tr. 9:10-14:22, 22:15-25; Payne Dep. Tr. 30:3-25; 6/1/07 Tr. 118:5-119:15, 123:9-17. Indeed, the government concedes that Ms. Crump's pre-hearing deposition given in May 2007 was "essentially the same as in her statement to the FBI and the U.S. Marshal's Service," which was a detailed interview given more than two years before her testimony at the evidentiary hearing. Opp. Br. at 22. The fact that Ms. Crump's testimony is not exactly the same as it was when she spoke to the federal agents much closer in time to the underlying events is hardly surprising given the passage of time; as well as the fact that Ms. Crump is a single mother who works full time while raising three minor children, including one with autism. Crump Dep. Tr. 26:4-28:6; 94:24-95:19.

HOWREY LLP

-7-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No. 3:02 CR-00031-JVS; 3:04 CV-00286-JWS

DM_US:20856379_3

1    Nor is it at all surprising that Ms. Crump may have been somewhat flustered
2 during her testimony at the evidentiary hearing given that she was only notified of the
3 need for her testimony a few hours beforehand while at work and she had
4 to drive approximately 90 miles from Seward to Anchorage at the height of rush hour
5 traffic in order to arrive at the U.S. Courthouse in time to testify.  6/1/07 Tr. 91:13-25,
6 92:8-19, 99:19-23.  Finally, the fact that Ms. Crump's use of terms may not be as
7 precise or crisp as an Assistant U.S. Attorney is hardly surprising given her limited
8 higher education and the amount of time that has elapsed since the events at issue.
9    Moreover, the "changes" noted by the government are hardly material.  Opp. Br.
10 at 28.  For example, use of the term "conversations" in the affidavit and referencing to
11 particular "questions" in her later interview, deposition and testimony is not
12 inconsistent.  Nor is that fact that she could not recall the gender or identity of the
13 particular juror asking a question about the "packets."  Opp. Br. at 28.  The government
14 attempts to bootstrap these minor discrepancies into a dramatic change by arguing that
15 none of the questions or statements was included in the log notes or transcript of the
16 trial.  Opp. Br. at 28.  As discussed below, the absence of an ex parte communication on
17 a recording or transcript is not affirmative proof of anything, much less impeachment
18 evidence of Ms. Crump.  Far from demonstrating a lack of credibility, the fact that Ms.
19 Crump's testimony has not remained absolutely identical over the more than five years
20 that have elapsed since Mr. Long's trial is wholly consistent with the testimony of a
21 truthful witness whose testimony has not been scripted or otherwise orchestrated.
22 Notably, more than five years after the trial, the jurors could barely recall their service
23 or even the broadest brushstrokes of the trial much less any of the specific details.  Yet,
24 notwithstanding the lengthy passage of time, there was testimony from the jurors that
25 was consistent with Ms. Crump's allegations.  Ms. McGinty recalled a question about a
26 "packet."  6/1/07 Tr. 29:12-23; 31:1-19 (McGinty); 6/1/07 Tr. 48:8-10 (Mahaney)**;**
27 6/1/07 Tr. 15:6-9, 16:1-10 (Lutrick).
28

HOWREY LLP

-8-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No.  3:02 CR-00031-JVS; 3:04 CV-00286-JWS

DM_US:20856379_3

Third, the government's attempt to discredit Ms. Crump's credibility based on her bias in Mr. Long's favor is clearly offset by her complete and truthful testimony as to her prior friendship with him, her view of him, and her understandable disappointment with the outcome of his trial. Opp. Br. at 29. Crump Dep. Tr. 21:14-22:2; 6/1/07 Tr. 162:14-163:15. Ms. Crump did not attempt to disguise or understate her longstanding friendship with Mr. Long, the fact that he was his third party custodian after his arrest or her concern as to the extent of his defense or lack thereof at trial. 6/1/07 Tr. 138:24-139:12; 162:14-163:15. She testified freely and consistently on direct and on cross examination as to those issues. 6/1/07 Tr. 116:22-117:1, 118:25-119:5, 162:14-163:15. Her open and non-defensive testimony in this fashion underscore rather than detract from her credibility. It was crystal clear from her demeanor that Ms. Crump's difficulty in recalling specific facts that occurred during a trial held more than five years ago is the inevitable result of the passage of time compounded by the press of personal obligations in the interim rather than bias. Here again, Ms. Crump's open and honest testimony as to her concerns about Mr. Long is much more consistent with credibility than would feigned indifference to him or his prospects at trial would have been.

Finally, the government's suggestion that the logs maintained by the electronic court reporter and/or the transcripts of the trial proceedings "prove conclusively" that the events alleged by Ms. Crump did not occur is misplaced. There are questions about the veracity of the log notes or the transcripts given the testimony of Debbie Lyons, the Electronic Court Reporter. As a preliminary matter, it is undisputed that at least one day of the proceedings were captured in handwritten log notes while the other days were captured electronically. Lyons Dep., Exh. 2 at 18. Although Ms. Lyons initially testified that the reason for a change to electronic notes was because the court reporters switched to "a computer program that was an electronic court reporting program" that replaced audiocassette tapes, she could not explain why one day of the trial proceedings would have been handwritten. Lyons Dep. Tr. 18:6-19. She had no explanation for the

HOWREY LLP

-9-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No. 3:02 CR-00031-JVS; 3:04 CV-00286-JWS

DM_US:20856379_3

1  anomaly and speculated that there "may have been a problem with the program where
2  the computer stopped or froze and we had to go to a tape at that point." Lyons Dep. Tr.
3  23:20-24:4, 93:13-94:12. The electronic recording system experienced an unexplained
4  anomaly during the evidentiary hearing in this matter ultimately necessitating an almost
5  3 minute off the record delay. 6/1/07 Tr. 121:8-123:1. Prior to going off the record, the
6  court reporter indicated that she did not know if the system was recording or whether
7  any of the transcript would be retrievable. *Id.* The government's reliance on the
8  electronic recording system's accuracy in the face of the foregoing and in the absence of
9  any affirmative evidence to support such a finding is unavailing. Second, Ms. Lyons
10 testified that the time indications in her log notes of the trial proceedings were entered
11 by herself by physically looking at a clock in the courtroom and entering the
12 information. Lyons Dep. Tr. 79:11-20. Yet the clock in the court room in which Ms.
13 Lyons' deposition took place was indisputably incorrect. *Id.* There is no evidence that
14 the clock in the courtroom during Mr. Long's trial was correct or that Ms. Lyons was
15 correctly recording the time in her log notes. Third, the log notes do not indicate
16 specifically whether the defendant or defense counsel is present other than at the outset
17 of the day or if the defense counsel is engaging in colloquy with the Court. Lyons Dep.
18 Tr. 95:12-96:2. Nor do the audiotapes of the proceedings indicate which parties are
19 present or were present immediately before recording of the proceedings begin. The
20 deposition testimony of Ms. Lyons also made clear that there was ample opportunity for
21 ex parte communications to occur notwithstanding the times on the log sheets and the
22 transcripts. For example she testified that the tape recording of the proceedings might
23 be turned off before both the judge and jury left the room. Lyons Dep. Tr. 88:4-17.
24 Thus, the government's suggestion that the log sheets or the transcripts somehow prove
25 that the ex parte contacts alleged by Ms. Crump did not occur is misplaced.

HOWREY LLP

-10-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No. 3:02 CR-00031-JVS; 3:04 CV-00286-JWS

DM_US:20856379_3

### B. Judge Sedwick's Undisputed Personal Relationship With The Victims Must Be Considered in Evaluating Whether He Improperly Failed To Recuse Himself Under Section 455(a).

As discussed in Section II.B., the government's attempt to preclude this Court's consideration of all the relevant facts related to Judge Sedwick's failure to recuse in this matter should be rejected. Opp. Br. at 33. Under the clear language of section 455(a) and the extensive case law thereunder, the Court must take "all" relevant facts into consideration in determining whether Judge Sedwick's impartiality may reasonably be questioned. To do anything less is to ignore the letter and spirit of section 455(a) and substantially risks undermining the public's confidence in the judicial process. *Liljeberg,* 486 U.S. at 864.[4]

On the contrary, the Court should reject the government's invitation to credit Judge Sedwick's prior ruling that there was no appearance of impropriety based on his personal relationships with the victims or the small size of the court. Opp. Br. at 33. As described more fully above, under settled Ninth Circuit law, this court must take those highly relevant facts into consideration in deciding the instant motion. It is precisely this type of fact that was critical to the Ninth Circuit's holding in *Clemens* that recusal of an entire district in a threat case was not necessarily warranted where those facts had not been shown. *Clemens*, 428 F.3d at 1180. Similarly, an average reasonable person would clearly consider relevant Judge Sedwick's failure to even attempt to deal with those undisputed facts by providing a written explanation of any kind for the basis of his denial of the recusal motion, Docket No. 195, particularly in light of the detailed written explanations provided by other judges in this Circuit confronted with facts suggesting

---

[4] The fact that the Court limited the evidentiary hearing to issues related to Ms. Crump's affidavit does not mean that the Court should not apply applicable law to undisputed facts in ultimately deciding whether to grant the relief sought in the instant motion.

-11-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No. 3:02 CR-00031-JVS; 3:04 CV-00286-JWS

HOWREY LLP

DM_US:20856379_3

personal relationships that could create an appearance of impropriety. *See*, *e.g.*, *Bernard v. Coyne*, 31 F.3d 842 (9th Cir. 1994) (extensive written opinion by Judge Kozinski explaining grounds for denying motion for recusal based on his personal relationship with United States Trustee); *United States v. Sundrud*, 397 F. Supp. 2d 1230, 1237 (C.D. Cal. 2005) (extensive written opinion by Judge Rafeedie as a result of being a mere "acquaintance" with alleged CSO victim of threats). Deliberate ignorance of facts relevant to the decision not to recuse in a timely fashion is not warranted by applicable law and cannot possibly be consistent with promoting public confidence in the integrity of the judicial process as contemplated by Congress and confirmed by the Supreme Court in *Liljeberg* and its progeny.

### C. If the Alleged Ex Parte Contacts Occurred There Was Probative Evidence of an Appearance Of Impropriety.

The government's suggestion that even if the alleged ex parte contacts occurred, they do not constitute any improper conduct is meritless for several reasons. Opp. Br. at 32-33. First, Judge Sedwick's adamant insistence that the alleged events did not occur create an inevitable conflict with Ms. Crump's testimony that cannot be explained away by the government as "not important." Second, the mere fact that an ex parte conduct occurred, taken in the context of Judge Sedwick's preexisting relationship with the victims, creates an appearance of impropriety under an "objective standard." Third, even if the Court concludes that there is not probative evidence that the alleged ex parte contacts occurred, the undisputed personal relationships between the victims and Judge Sedwick without more, satisfy the probative evidence requirement for recusal under section 455(a).

-12-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No. 3:02 CR-00031-JVS; 3:04 CV-00286-JWS

HOWREY LLP

DM_US:20856379_3

## IV. CONCLUSION

For all the reasons set forth above and in Petitioner's Opening Brief, Mr. Long respectfully requests that the Court find that there is probative evidence supporting a finding of an appearance of impropriety under 28 U.S.C. section 455(a) and the relief requested under Fed. R. Civ. P. 60(b)(6) should be granted.

Dated: November 19, 2007

Respectfully submitted,

HOWREY LLP

 s/ Roman E. Darmer II
Howrey LLP
2020 Main Street, Suite 1000
Irvine, CA  92614
Phone:  (949) 759-3950
Fax:  (949) 721-6910
E-mail:  darmerr@howrey.com
CA State Bar No. 212578

HOWREY LLP

-13-
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No.  3:02 CR-00031-JVS; 3:04 CV-00286-JWS

DM_US:20856379_3

# CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2007, a copy of the foregoing document **PETITIONER ROBERT A. LONG'S REPLY TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR MISCELLANEOUS RELIEF** was served electronically and by regular U.S. mail upon the following:

**ELECTRONIC & U.S. MAIL**
Daniel R. Cooper, Jr., Esq.
Assistant U.S. District Attorney
Federal Building and U.S. Courthouse
222 West Seventh Avenue #9
Room 253
Anchorage, AL  99513-7567
daniel.cooper@usdoj.gov

**ELECTRONIC & U.S. MAIL**
Honorable James V. Selna, Judge
U.S. Central District Court of California
Ronald Reagan Federal Bldg.
 and U.S. Courthouse
411 West Fourth Street, 8th Floor
Santa Ana, CA  92701
JVS_Chambers@cacd.uscourts.gov

**ELECTRONIC & U.S. MAIL**
Mr. Robert A. Long
P. O. Box 3526
Seward, Alaska  99664
xtrapper@msn.com

              s/ Roman E. Darmer II
Roman E. Darmer II

HOWREY LLP

i
PETITIONER LONG'S REPLY MEMO. OF POINTS & AUTHORITIES ISO MOTION FOR MISC. RELIEF
Case No.  3:02 CR-00031-JVS; 3:04 CV-00286-JWS

DM_US:20856379_3