

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROBERT A. LONG,

Defendant.

CASE NO: A02-31 CR (JVS)

CASE NO: A04-286 CV (JVS)

MEMORANDUM OF DECISION

RE MOTION FOR RECUSAL

(PUBLIC VERSION)[1]

In response to an order to show cause as to why all pending motions should not be denied following the Court's ruling at Docket No. 227 (Docket No. 239), petitioner Robert A. Long ("Long") asserted that the district judge presiding over his habeas corpus proceeding should have recused himself because of improper *ex parte* contact with the jury during Long's underlying criminal trial. (Defendant Robert A. Long's Response to Order to Show Cause, Docket No. 267, pp. 2-3, 11.)

---

[1]Jurors' seat numbers have been substituted for their actual names. In all other respects the text is the same.

1

1  The Court declined to consider the request for recusal as a matter of
2  reconsideration (Minute Order re Order to Show Cause, Docket No. 273, pp. 2-3),
3  but rather deemed Long's response itself a motion for recusal. Id., p. 3.)
4  Accordingly, the Court ordered an evidentiary hearing on Long's allegations.

6      The Court first discusses Long's allegations and the evidence adduced at the
7  hearing and in post hearing filings, and then determines whether recusal is required
8  under 28 U.S.C. § 455.

10  I.    Long's Allegations and the Evidence at Hearing.

12      The hearing was limited in scope to the question whether the district judge
13  had engaged in *ex parte* communications with the jurors outside the presence of
14  Long and his counsel and Government counsel.

15      A.    The Crump Affidavit.

17      In connection with his Motion for Subpoenas of the Trial Jury on the Matter
18  of Possible [*sic*] Ex-Parte Trial Jury Communication by Judge Sedwick, Long
19  submitted several affidavits from Tina Crump ("Crump"), including one outlining
20  the alleged *ex parte* communications. (Docket No. 193, pp. 8-9.)

22      In her May 18, 2005 affidavit, Crump related events that occurred during
23  Long's 2002 trial. (Id.) Crump explained the delay between the trial and her
24  coming forward with her allegations: She did not appreciate the significance of her

25  _____

26      [2]Long had previously made similar allegations of improper *ex parte* contacts, but with no
27  competent evidentiary support. (Docket No. 179, p. 3.)

28                                        2

observations until February/March 2005 when she was having discussions "with other People" about state grand jury proceedings then taking place in Kenai, Alaska. (Id., p. 8.)

Following a recess in Long's trial, she entered the court room to find only the district judge, the jury and two guards present. (Id.) This is what she observed:

> . . . Judge Sedwick, and the Trial Jury were engaged in conversation regarding matters of the Trial, questions regarding the Facts, Mr. Long's, mental state, and question of the Law's that applied and others . . ..

(Id., p. 9; capitalization and punctuation per original.) Thereafter, Long, counsel, and the spectators returned to the court room, "and the Trial started without mention of the Judge and Jury talk." (Id.)

As discussed below, what actually transpired according to Crump was substantially different.

B. The Evidence at Hearing.

At the hearing eleven jurors,[3] one alternate,[4] a venireman mistakenly summoned as a presumed alternate,[5] the district judge, and Crump testified.

---

[3]They were Juror No. 3, Juror No. 1, Juror No. 4, Juror No. 7, Juror No. 6. Juror No. 11, Juror No. 5, Juror No. 8, Juror No. 12, Juror No. 2, and Juror No. 9.

[4]Alternate No. 1.

[5]Venireman No. 1.

3

(Transcript of Hearing, June 1, 2007, *passim* [hereinafter "Hearing"].)  The hearing gave the Court an opportunity to judge the demeanor and attitude of virtually all of the possible percipient witnesses.[6]

In addition, pursuant to the parties' agreement, the Court received and reviewed certain designations which consisted of excerpts from the deposition of Debbie Lyons ("Lyons"), the district judge's electronic court reporter at the time; excerpts from the depositions of certain Court Security Officers ("CSOs") at the time; and an interview report prepared by federal agents following Crump's assertion of the original allegations in her affidavit.  (Designations, Docket Nos. 313, 323 *passim*.)

The Court believes that given the passage of time, the evidentiary record was as complete as reasonably possible.

*The Jurors and Alternate.*

The Court found each of the jurors and the alternate to be credible and unbiased witnesses.  It appeared that none of them had discussed their testimony in advance with anyone, and most seemed not to know why they had been summoned in advance of appearing at the hearing.

Counsel for Long queried each juror on four basic topics:

• Was there ever a time when the district judge and the jury were in

---

[6]One juror had moved out of the jurisdiction and the actual second alternate juror was never located.

4

the court room in the absence of Long and counsel ?

• Had any juror asked the district judge in the court room a question ?

• Had any juror asked the district judge about a "packet" of documents in the court room ?

• Had any juror asked the district judge in the court room a question about Long's mental health ?

(E.g., Hearing, pp. 7-3:6, 8-10, 12-14; 8:5-6.)

Among other things, counsel for the Government asked each juror whether he or she could see Long and the district judge at all times from the position in which he or she was sitting in the jury box, and whether there was ever a time he or she did not see both the district judge and Long in the court room. E.g. id., p. 18:3-8, 10-11, 13-16.)

Five years lapsed between the trial and the hearing, and this fact was evident in the testimony.  The jurors fell into three categories: Jurors who had an affirmative recollection that the conduct about which Long's counsel inquired did not occur; jurors who could not recall whether the conduct about which Long's counsel inquired had occurred; and jurors who had virtually no recollection of the trial beyond the fact that the juror had served, and that the case had something to do with threats against federal judicial officers.[7]  No juror affirmatively testified that any *ex parte* communication had occurred.

---

[7]In this category were Juror No. 6, who was going through a divorce, and Juror No. 5.

1    The first, and the Court believes most helpful, juror to testify was the
2  foreperson, Juror No. 3.  Juror No. 3 was articulate, and had subsequent jury
3  experience with which to compare his service during the Long trial.  He denied that
4  there was ever a time where Long was absent, but the district judge was present.
5  (Id., p. 7:7.)  Any juror questions about Long's mental health "didn't happen."
6  (Id., p. 8:7-9.)  He thought the trial had been well run, and had no question about
7  the appropriateness of the proceedings.  (Id., pp. 9:7; 12:12-16.)  This was Juror
8  No. 3's first jury service, and on most subjects, Juror No. 3 had a detailed memory
9  of the case.  (Id., p. 11:15-12:-2.)  With regard to juror questions and specifically
10  juror questions about a "packet," he could not recall.  Id., p.7:21-22.)  The Court
11  gives great weight to Juror No. 3's testimony, and finds significant his affirmative
12  recollections and his lack of recollections on other subjects given his role and the
13  impression his first jury service made upon him.  If anything unusual had occurred,
14  the Court believes that Juror No. 3 would have recalled it.

15    Juror No. 7 recalled that Long was always present with his lawyer; it did not
16  occur that only the district judge was present.  (Id., pp. 31:17-32:3.)  She would
17  have remembered if Long's attorney was not present.  (Id., pp. 31:20-32:1.)

19    Juror No. 8 testified that Long was always there.  (Id., p. 65:15-16.)

21    Juror No. 11 answered "No" when asked if there had been any question from
22  any juror generally and specifically any question regarding a packet.  Id., p. 47:8-
23  14.)

25    Juror No. 2 answered "I don't believe so" when asked if the judge and jury
26  were ever present in Long's absence.  (Id., p. 74:15-20.)  Any questions with
27  regard to Long's mental health "did not happen."  (Id., p. 75:3-5.)

28                                             6

Juror No. 9 testified that "whenever we were [in the court room], everybody was there." (Id., p. 87:16-19.) He had a specific recollection that there had been no juror questions regarding a packet or Long's mental health. Id., pp. 88:23-89:6.) The Court found Juror No. 9 candid and believable.[8]

Juror No. 1 did allow for the possibility that the topic of mental illness "might have come up . . . within the jury room or within open court." Id., p. 16:5-17.)

Alternate No. 1 testified that he did not "recollect a time" when the district judge was present but not Long. (Id., p. 41:6-12.) "[T]o the best of [his] recollection," Alternate No. 1 testified that there had been no juror questions about Long's mental health. (Id., p. 41:19-21.) Further, "to the best of [his] memory," Long was never absent. (Id., p. 44:22-25.) In weighing Alternate No. 1's testimony, the Court takes into account that there was no possibility of confusing events during deliberations, because he was never a member of the deliberating jury. The Court found Alternate No. 1 believable and honest in his demeanor and expression.

The balance of the jurors with some recollection of the trial simply testified that they did not recall or remember the specific events posited by the four basic questions asked by Long's counsel. (E.g., id., pp. 14:23-15:12; 24:11-25:6.)

On cross examination, each juror testified that he or she could at all times

---

[8]When asked if there were anything usual about the trial, he stated that he did not like the district court's instructions that he was required to follow the law. He thought that was not part of a juror's obligation. (Id., p. 89:11-16.)

see Long and the district judge. (E.g., id., pp. 33:25-34:4; 43:24-44:11.)  None could recall a time when both were not present in the court room. E.g., id., pp. 18:13-17; 26:18-21; 34:17-20.)

The jurors indicated that there had been no communications between the jurors and the district judge other than two written questions after the case had been submitted to them. (E.g., id., pp. 8:15-18; 9:16-10:8; 10-19:24; 14:23-15:1.)

The Court believes that if any *ex parte* communications between the district judge and the jury occurred, at least one juror would have remembered.  None did.

*The District Judge.*

The district judge was called as a witness by the Government.  After confirming his position and that he had presided at Long's criminal trial, he was only asked two questions by the Government.  Was he ever present in the court room with the jury in the absence of Long and counsel: "No." Id., p. 102:15-18.) Was it his practice to be present in the court with a jury in the absence of the defendant and counsel: "Never."  (Id., p. 102:19-22.)

On cross-examination, Long's counsel did not challenge the substance of the district judge's testimony with any questions.  Rather, for purpose of showing bias, counsel inquired whether the district judge had a personal, professional or social relationship with the two judicial officers who had been the target of the threats for which Long had been prosecuted.  He confirmed that he did.  Id., p. 103:14-22.)

In assessing the weight to give the district judge's testimony, the Court applied the same standards for assessing credibility that it applied to all witnesses.

8

1  In the end, the testimony of the district judge was neither determinative nor a
2  significant factor in the Court's assessment of what events actually occurred.[9]

         *Tina Crump.*

6       Initially, Long and the Government had proposed not calling Crump in
7  person, but instead intended to rely on extracts from her deposition, which had
8  been taken within the previous month.  The Court expressed surprise that it would
9  not have the opportunity to assess directly the demeanor and manner of the only
10 person who had claimed directly and unequivocally that she had observed the
11 district judge engaging in *ex parte* communications.  Indeed, Crump's affidavit had
12 been the exclusive basis for the Court to order an evidentiary hearing.  (Docket No.
13 273, p. 3.)  The parties contacted Crump at her place of work in Seward, about
14 three hours South of Anchorage, and she agreed to come to the Court House.  The
15 examination began about 6:15 p.m., and extended for approximately an hour and
16 half.

17      Crump testified that she had known Long "a long time."  (Hearing, pp.
18 116:24-117:1.)  She served as Long's "Third-Party Custodian" during the pre-trial
19 phase of Long's criminal proceeding.  (Id., p. 117:2-4.)  As she understood it, she
20 had no financial obligation if Long failed to appear, but she could have been jailed.
21 (Id., pp. 181:13-182:2.)  Crump stated that she had attended the entire criminal trial.
22 (Id., p. 162:4-13.)

24      Questioning began on her affidavit.  She testified that Long had drafted the

_____

26      [9]Indeed, the Court's factual findings would be the same even if the Government had not
27  called the district judge.

28                                          9

affidavit, and that she had simply reviewed it while at her place of work as a waitress and signed it, apparently without making any corrections. Id., p. 120:1-21.)  She asserted that Long presented the affidavit within several days of a sort of round-table discussion at the restaurant concerning grand jury proceedings in Kenai that  had triggered her recollection of the alleged *ex parte* communications. At the hearing, she stated that she should have reviewed the document more closely, and today would make several changes, both minor and of core substance.

Instead of just "two guards" present during the observed communication (Docket 193, p. 8), there could have been more as well as spectators.  (Hearing, p. 121:2-7.)  The alleged communications between the district judge and the jury turned out not to be a "conversation" but only two questions:

> • A male juror asked the district judge whether the jury could consider Long's mental condition.  The jury was advised that "it needed to follow the packet."  (Id., p. 129:14-23.)

> • Another juror asked if the jury could have the whole "transcript." Questioning revealed that Crump was referring to one of the documents apparently in evidence.  The district judge advised that "you have everything you need."[10]  (Id., p. 127:9-21.)

Both exchanges were very short, less than thirty seconds, and consisted of a single question and a single answer.  (Id., pp. 179:19-181:12.)

---

[10]This second question may have been posed as the same time or a different time as the first question.  Crump was not sure.  (Id., pp. 126:21-127:2.)

Contrary to her affidavit, Crump conceded that there had been no "conversation" concerning the "Facts" or the "Law's that applied" to the case. (Id., pp. 152:22-24; 153:3-4.)  She believed that Long had based the affidavit on conversations with her, but agreed that Long did not translate what she said exactly as she said it, or as she would have liked. (Id., p. 167:10-20.)

The Court finds that there were substantial reasons to distrust and disregard Crump's affidavit and her testimony concerning the alleged *ex parte* contacts even as narrowed by her testimony at the hearing.

First, bias is significant factor here.  She had known Long "a long time," and served as his "Third-Party Custodian," which held a potential threat of punishment, and was involved in the trial.[11]  She testified on behalf of Long (id., pp. 141:4-142:6), and thought the district court's ruling excluding all other character witnesses was unfair.  (Id., p. 162:14-23.)

Second, the substantial variance between the affidavit and what she testified at hearing as actually occurred greatly undermines her believability.  Two questions of a discrete nature could not be mistakenly characterized as a "conversation" about the facts and law of the case.  This suggests that she was subject to manipulation by Long.  This possibility is bolstered by the fact that she gave two other affidavits in connection with the same motion.  (Docket 193, pp. 4-7.)  A comparison of the style and mode of expression suggests that Long probably drafted these affidavits as well, although there was no direct testimony to this

---

[11]Her answers were generally consistent with the answers she gave to federal agents following the filing of her affidavit. (Payne Depo., Ex. 1; Caudil Depo., 19:1-21:2.)  But there were also some discrepancies.

1  effect.

2

3       Third, Crump's testimony concerning a juror's request for missing portions
4  of a document appears to be at odds with the record.  There was no evidence that
5  any of the trial documents received into evidence were redacted or otherwise
6  altered.  (Hearing, p. 189:6-12.)  Thus, there would be no basis in the record for the
7  juror question that Crump asserts was asked.[12]

8

9       There was nothing in Crump's demeanor or manner of response to suggest
10  that she was uncooperative in answering questions posed by either Long's counsel
11  or the Government.  She had come a long distance at the end of her work day to
12  testify.  There was nothing to suggest that she did not have a good faith belief in
13  the answers she gave at hearing.[13]  The Court simply did not believe her testimony.

14       C.  Post-Hearing Evidentiary Submissions.

15

16       *Court Security Officers.*

17

18       CSOs  who provided court room security during trials while the Long case
19  was tried were identified and deposed.  None of them had any specific recollection
20  of the Long trial.[14]  But none could recall any instance ever where a judge was

21  _____

22       [12]Following the hearing, Long's counsel advised the Court that he would review the trial
23  exhibits, and advise the Court if there had been any excisions.  (Motion, p. 9 n.5.)  Counsel has
24  not advised of any excisions.

25       [13]The FBI agents who interviewed Crump found her both cooperative and credible.
26  However, they did not have the benefit of the full record now before the Court.

27       [14]Relevant citations to the depositions are summarized in Long's Memorandum of Points

28                                      12

alone in the court room with a jury.[15]

*Electronic Court Reporter.*

The electronic court reported for the Long trial, Lyons, was deposed, and her testimony proved inconclusive. She could not recall any instance in which Long and his counsel were not present. (Lyons Depo., p. 51:10-19.) The Government's careful summary of the recording logs demonstrates that there was no time on the record when Long and his counsel were not present or that district judge was alone with the jury. (United States Opposition, pp. 7-13.) However, Lyons also testified that there would likely be no record by way of recording if there were an instance where the parties or their counsel were not present. (Id., p. 50:21-51:10.)

D. Findings of Fact.

Having heard and weighed the evidence offered at the hearing and in the post-hearing submissions, the Court makes the following findings of fact:

1. During the course of the trial, there were no *ex parte* communications between the district judge and the jury.

2. During the course of the trial, there were no *ex parte* communications between the district judge and the jury about the facts of the case.

---

and Authorities in Support of Motion for Miscellaneous Relief, p. 6.

[15]Relevant citations to the depositions are summarized in the Unites States Opposition, p. 14, n.30.

13

1    3.  During the course of the trial, there were no *ex parte* communications
2  between the district judge and the jury about the law applicable to the case.

4    4.  No questions were posed to the district judge by any juror in the court
5  room in the absence of Long and his counsel.

7    5.  No questions concerning the bearing of Long's mental health on the case
8  were posed to the district judge by any juror in the court room in the absence of
9  Long and his counsel or at all.

11    6.  No questions concerning a request for missing portions of documentary
12  evidence were posed to the district judge by any juror in the court room in the
   absence of Long and his counsel or at all.

14  II.    The Motion for Recusal.

16    Section 455 of Title 28 governs recusals: "Any justice, judge, or magistrate
17  judge of the United States shall disqualify himself in any proceeding in which his
18  impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis
19  supplied).  The statute is intended to have a broad prophylactic effect to protect the
20  integrity of the judiciary and the public's confidence in the judicial system.
21  Liljeberg v. Health Services Acquisition Corp, 486 U.S. 847, 864 (1988).  Thus,
22  required recusal extends beyond actual bias to circumstances which would cause a
23  reasonable person to question the impartiality of the judge.  Id. at 861.)

25    There can be no doubt that *ex parte* communication by a district judge with a
26  jury on the subject matter of the case is improper conduct, and that such
27  communication would cause a reasonable person to conclude that the district judge

28                                    14

1   was not impartial. But those are not the facts of this case, as the Court has found

2   after permitting extensive discovery and conducting an evidentiary hearing.

3

4       The present Motion turns on whether the facts as found create the

5   appearance of impartiality, regardless of whether or not there has been misconduct

6   here. Liteky v. United States, 510 U.S. 540, 548 (1994); Unites States v. Rogers,

7   119 F.3d 1337, 1383 (9th Cir. 1997). The Court agrees with Long and the

8   Government that Clemens v. United States, 428 F.3d 1175, 1178 (9th Cir. 2005),

9   cited at Motion, p. 11; United States Opposition, p. 5 n.7, is instructive in giving

10   content to the notion of a reasonable person. There, the Ninth Circuit held that the

11   reasonable person is the "well-informed, thoughtful observer, as opposed to a

12   hypersensitive or unduly suspicious person." Id.; internal quotation marks

    deleted.)

13

14       No reasonable person conclude that Crump's allegations create the

15   appearance that the district judge lacked impartiality. The thoughtful observer

16   would focus on the same factual inconsistencies and lapses in credibility that the

17   Court did. This is not a case where one might question the impartiality of the

18   district judge on admitted facts that might support both benign and untoward

19   conclusions, but rather this is a case where there are no facts to support a finding of

20   misconduct. Application of a different rule here would put a premium on

21   incendiary allegations, even where no facts support them, to the disregard of the

22   truth. As the Tenth Circuit observed, United States v. Hines, 696 F.2d 722, 729

23   (10th Cir. 1982), "section 455(a) must not be so broadly construed that it becomes,

24   in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated

25   suggestion of personal bias or prejudice." While "some kind of probative

26   evidence" may be sufficient to support recusal," Matter of Searches Conducted on

27   March 15, 1980, 497 F. Supp. 1283, 1291 (E.D. Wis. 1980) (internal quotation

28                          15

marks deleted), there still must be evidence, and not merely allegations.

On the record before this Court, there is no basis to support a finding that the district judge acted improperly in presiding over Long's trial, or that the circumstances gave rise to an appearance of the lack of impartiality. The alleged misconduct did not occur; a reasonable observer could not infer a lack of impartiality from the bare allegations which remain. Clemens, 428 F.3d at 1178.

III.    Alternative Basis for Recusal.

In entertaining Long's Motion for Recusal, it was the Court's intention only to consider a motion based on the new evidence of alleged misconduct. The Court noted that the Motion was belated, that the district judge had invited a recusal motion early in the case (Docket No. 25), and that Long had in fact brought one recusal motion on the theory that the district judge had a role in investigating his complaints against Judge Singleton and Magistrate Judge Roberts. (Minute Order, Feb. 10, 2006, pp. 6-8, Docket No. 237.) Nevertheless, the Court entertained the present Motion. (Docket No. 273, p. 2-3.)

The Court declines to expand the scope of the hearing to include the question of whether Judge Sedwick should have recused himself because the victims of Long's crime are fellow judicial officers in a small district. (Long Reply, pp. 11-12.) The basis for such a challenge was known from the outset of the case, and such a challenge is not timely. Rodgers, 119 F.3d at 1382-83; United States v. Branco, 798 F.2d 1302, 1304-05 (9th Cir. 1986); United States v. Conforte, 624 F.2d 869, 879 (9th Cir.), cert. denied, 449 U.S. 1012 (1980); accord United States v. Brinkworth, 68 F.3d 633, 639 (2d Cir. 1995). Moreover, it does not follow as a matter of law that all judges in a district must recuse themselves

16

because a fellow judicial officer is an alleged victim of a crime being prosecuted in the district. Clemens, 428 F.3d at 1180.

The evidentiary hearing confirmed no more than what could have been inferred from outset: That a judge in a small district has professional and social relationships with his colleagues. (Hearing, p. 103:14-22.)  Long had counsel through the trial phase of this case, and he was capable of presenting this argument long ago.[16]

IV.    Conclusion.

The Motion for recusal is denied.

At Docket 239, the Court directed Long to show cause why eleven pending motions should not be dismissed as covered by prior rulings in the case, or to the extent that new matter was raised, why they should not be denied as second or successive petitions for which leave had not been sought from the Ninth Circuit. 28 U.S.C. § 2255 ¶ 8.  In response, Long contended that the Order to Show Cause was premature (Defendant Robert A. Long's Response to Order to Show Cause, p. 1), and then proceeded to present arguments which led the Court to conclude that an evidentiary hearing was required to assess Long's recusal allegations.

_____

[16]Contrary to Long's suggestion (Motion, p. 18), the argument does not gain traction in light of the fact that all the remaining district judges recused themselves after Long alleged that the district judge had engaged in misconduct.  It is one thing to preside over a case where a colleague is an alleged victim; it is far different to preside over a case where one must directly judge and assess the integrity of a colleague.

17

The Court remains of the same view that the eleven pending motions should be dismissed.  Accordingly, each of the Motions identified in Exhibit A hereto is conditionally dismissed.  Long now has counsel.  Counsel may renotice any of the motions within 30 days if he certifies, consistent with his obligations under Rule 11 of the Federal Rules of Civil Procedure, that the motion should be heard by the Court.  If a certification is made within 30 days, the Court will conduct a status conference to determine what further briefing by Long and/or the Government should be ordered.  Given the passage of time, the Court is unlikely to extend the period for certification.

**REDACTED SIGNATURE**

Dated: May 29, 2008

_____

James V. Selna
United States District Court

18

# EXHIBIT A

## PENDING MOTIONS

| Docket | Date | Title | Subject |
|---|---|---|---|
| 202 | 08/17/05 | Writ to Mandate Prosecutor to, Under Sworn Oath, Deny that a Phone Tap Existed, that Defendant was Denied Counsel at Sentencing; to Deny that a Mail Interception was Used | Motion to order the prosecutor to give sworn affidavit that no wiretap was used |
| 203 | 08/17/2005 | Common Law Writ of Mandate for Correction of the Erroneous and Bad Faith Ruling of Judge Beistline, on the Subject of Jurisdiction | Judge Beistline wrote an order finding that the U.S. courts have jurisdiction over violations of 18 USC 3231. Defendant moved to mandate that Judge Beistline provide a foundation for the finding of jurisdiction |
| 206 | 09/26/05 | Motions for Subpoenas of Trial Jury | Motion to subpoena trial jury regarding ex parte communication |
| 207 | 09/26/05 | Motion for a Ruling on the Denial of the Requirement of the Government to Bring the Defendant Before the Court within the Set Time by Law | Defendant claims he was not brought before the court within 72 hours. |
| 210 | 10/05/05 | Motion for Order to Trial Counsel Dieni for an Affidavit | Motion to order defense counsel to give sworn |

19

| Docket | Date | Title | Subject |
|--------|------|-------|---------|
| | | Regarding Phone Tap, Witness Tampering of Defense Witnesses | affidavit regarding his knowledge of the use of a wiretap, whether defense witnesses were interfered with |
| 211 | 10/05/05 | Motion for Order to Appeals Counsel Eugene B. Cyrus for All Defendants Letters to Counsel | Defendant moves for all letters and documents relating to his appeal, including the appeal itself |
| 212 | 10/05/05 | Motion to Order Clerk of Court to Correct Docket Sheets | Motion to correct docket sheets to show lack of appearances by appointed counsel and bad faith of Public Defender's Office |
| 217 | 10/24/05 | Writ of Demand to Compel Official Duties Refused | Motion to compel Prosecutor to give sworn affidavit regarding a wiretap. |
| 218 | 10/24/05 | Writ of Demand to Compel Official Duties Refused | Defendant moves the Court to order Appeals Counsel Eugene Cyrus to provide to Defendant all attorney-client correspondence that Defendant wrote in relation to his appeal. |
| 219 | 10/24/05 | Write of Demand to Compel Official Duties Refused in Discovery | Motion to compel a deposition of Trial Defense Attorney Michael D. Dieni regarding wiretap, missing |

| Docket | Date | Title | Subject |
|--------|------|-------|---------|
|  |  |  | testimony, refusal to act in Defendant's interest, witness tampering |
| 235 | 01/30/06 | Motions Under Mandatory Judicial Notice for Dismissal for Lack of Federal Jurisdiction as a Stand Alone Issue Filed Timely |  |